No. 31,207.

ROY STEWART, *Appellee*, v. THE COMMONWEALTH CASUALTY COMPANY OF PHILADELPHIA, PENNSYLVANIA, *Appellant.*

(22 P. 2d 435.)

Opinion filed June 10, 1933.

*Otis S. Allen* and *George S. Allen*, both of Topeka, for the appellant.
*Robert D. Dutton*, of Wakeeney, for the appellee.

The opinion of the court was delivered by

HUTCHISON, J.: The appeal in this case is by the defendant insurance company from a judgment rendered in the trial court against it and in favor of the plaintiff for $375 for the loss of an eye. The

judgment was rendered in an action to reform an accident insurance policy issued by defendant to plaintiff so as to conform to the oral agreement made between the agent of the defendant company and the plaintiff, and to recover thereon.

The petition alleged that the defendant's soliciting agent represented to plaintiff that the policy he was offering was an unlimited policy and would protect him against accidents he might suffer in the course of his business as a blacksmith; that these statements were false, and the agent made them knowing they were false and with the intent to deceive the plaintiff and for the purpose of inducing him to act upon such representations and apply for a policy; that plaintiff did rely upon such statements and the policy issued was limited to protection only while traveling.

The answer pleaded estoppel by reason of the plaintiff signing a formal application and later receiving and accepting the policy which bore on its face the request, "Please read your policy," and the policy provided that "No agent has authority to change this policy and waive any of its provisions. No change in this policy shall be valid unless approved by an executive officer of the company and such approval be indorsed thereon."

Defendant denied that the agent Flanders, who was only a soliciting agent, had any authority to sell anything but a limited policy or to bind the defendant in any manner whatever by any different policy or contract of insurance.

The case was tried upon an agreed statement of facts, the pertinent facts thereof being as follows:

"That on or about April 7, 1929, one J. R. Flanders was an agent of the defendent company, authorized to solicit applications, collect premiums and remit the same to said company and deliver such policies of insurance as were issued and approved by the company and sent to him for delivery; and the company authorized him to solicit only limited policies in forms designated as 'Perfection $20.00 Policy,' 'Equitable $6.00 Policy,' 'Equitable $10.00 Policy' and 'Equitable $16.00 Policy.' That said Flanders was authorized by the commissioner of insurance of Kansas to solicit insurance for said company.

"That on April 7, 1929, said Flanders called on the plaintiff and solicited him for a policy of insurance in said company. Flanders did not explain the policy to plaintiff. He had no sample policy with him. He told the plaintiff the policy was good any place he got hurt or any how he got hurt; blacksmiths were being hurt every day; that it was the kind of a policy for a man in business to have. He said the policy was good any place. Plaintiff signed an application. . . . About ten days later the plaintiff received the policy through the mail. . . . Plaintiff further says that Flanders did not tell him

how much the policy was good for in case he got hurt; he said it was good for what the policy called for, nothing more, but he stated no amounts. He thought Flanders said something about $375 for an eye, but plaintiff does not remember just what he said; plaintiff does not remember what Flander said with reference to the contents of the policy. Plaintiff states further that he put the policy in the bank after he received it, without reading it. After his accident he got the policy and read it. . . .

"On October 31, 1929, and while the plaintiff was engaged in the regular course of his trade, the said plaintiff, by accidental means, received a foreign substance in his left eye, causing the necessity of having the eye removed; that shortly after said injury and while he was in the hospital he notified the company of his accident by letter."

The stipulation contains further facts concerning tender, hospital and doctor bills, loss of time and attorney fees, none of which will be necessary to the issues here involved on review.

The application signed by plaintiff was very brief. It commenced by saying, "I hereby apply for limited accident and sickness insurance in the Commonwealth Casualty Company of Philadelphia, Pa., to be based upon the following representations of facts": This was followed by his name, residence, occupation, date and signature.

Appellant assigns error in two particulars, viz., that no fraud was proved or facts established on which a reformation could be based, and that plaintiff is estopped from recovering compensation contrary to the terms of the policy.

There is no dispute about the amount of the premium required. Plaintiff paid the amount asked. The stipulation says the agent said the policy was good for what it called for and the copy of the policy attached to the answer shows it called for $375 for loss of one eye.

The policy itself shows plainly it was limited to travel accidents, specifically stating the six kinds of common carrier and passenger service that would be recognized. One of the agreed statements of facts, above quoted, is that this agent was not authorized to issue any other kind than limited policies. Then follows that "He told plaintiff the policy was good any place he got hurt or any how he got hurt; blacksmiths were being hurt every day; that it was the kind of a policy for a man in business to have. He said the policy was good any place." We are compelled, by reason of these and other facts in the agreed statement and the attitude of the defendant as to the kind of a policy it was that the agent was selling, to brand this statement of the agent as false. We can hardly be heedless of,

or insensible to, the human purpose of making such misrepresentations. The only purpose conceivable in an agent falsifying to a prospective purchaser is to induce him to rely upon such misrepresentations and thus accomplish the desired purpose of effecting a sale. Neither is it conceivable nor suggested that a reputable and responsible company, like the defendant, had in its service as an authorized soliciting agent either a child or an imbecile who innocently made such misrepresentations without knowing the facts about the only kind of policies he was handling. When we put together these facts found in, and necessarily drawn from, the stipulation, we have the false statements made by the agent, knowing them to be false and made with the intent to deceive, which is all that is necessary to constitute the element of fraud on his part.

Of course the insurance company is not always liable for the acts and representations of its authorized soliciting agent, nor does the agreement made by such agent always bind the company, but, generally speaking and when within the bounds of his work of soliciting and procuring applications, he can bind the company as to the nature and character of the protection he is offering, and for these purposes he has the power of the company, as was said in *Pfiester v. Insurance Co.*, 85 Kan. 97, 116 Pac. 245.

"An agent for a life insurance company whose authority is limited to negotiating for, taking and transmitting applications for the approval or rejection of the company is the agent of the company and not of a person whom he solicits to take insurance, and for those purposes he has all the power the company itself possesses." (Syl. ¶ 1.)

"The acts, assurances, and representations of an agent done and made within the apparent scope of his authority are binding on the insurer. . . . Consequently, where the agent makes misrepresentations to the applicant for insurance, as to the scope of the policy, or the risks covered by it, it has been held that the company will be estopped to deny such representations." (1 C. J. 406.)

In the case of *Cue v. Insurance Co.*, 89 Kan. 90, 130 Pac. 664, the insurance company was held bound by the waiver of the agent writing the application of the requirement that no gasoline be used on the premises.

In *Shinn v. Benefit Association*, 102 Kan. 134, 169 Pac. 215, the insurance company was held bound by the terms of the policy notwithstanding the application by its agent contained many misstatements inserted by the agent and not read by the applicant.

Plaintiff relies strongly on the case of *Nichols v. Casualty Co.*, 113 Kan. 484, 214 Pac. 1111, where it was held that—

"Representations, apparently within the scope of his authority, made by an insurance agent authorized to solicit insurance, take applications, collect and remit premiums, and to receive and deliver policies, to an insured whom he solicits, and relied upon by the insured, are binding upon the insurance company." (Syl.)

Appellant cites the closing sentence of a reference to this decision in the opinion in *Myers v. Anti-Automobile Thief Ass'n*, 129 Kan. 506, 283 Pac. 503, where it disapproves the decision so far as it tends to sanction the power of a soliciting agent to bind the company by an oral contract of insurance. The Myers case, *supra*, was an action purely upon an oral contract and not on a contract corresponding to an application for a policy, or any kind of a policy which the company put out, and the party making the oral contract was not known to the insurance company. The Nichols case, *supra*, did not concern nor involve an oral contract. The policy issued in that case did not cover the accident which caused the injury and the question involved was the extent to which the insurance company was bound by representations made by its soliciting agent. The result was as quoted above, but this enumeration of particulars is only to show that it did not concern an oral contract and therefore was not an authority in a case such as the Myers case.

Appellant insists that plaintiff is estopped to ask for reformation after having had the policy in his possession for six months, and cites the case of *Pierce v. Liberty Life Ins. Co.*, 120 Kan. 86, 242 Pac. 133, where, under similar preliminary circumstances, the insured made demand very shortly after receiving the policy for the return of the premium paid by him, but the questions of suffering an injury and failing to read the policy were not there involved.

It was said in *Insurance Co. v. Darrin*, 80 Kan. 578, 103 Pac. 87, where the insurance company extended in the policy the iron-safe requirement further than the application stated it should be applied, that the insured "may assume that the company has discharged its duty and has written the policy on the basis of the application, and he is not obliged to read the policy to see if it conforms to the application." (Syl. ¶ 3.) In the same case it was further held:

"If such an application be received and retained by the company, a policy be written and delivered, and the premium be paid by the applicant and kept

by the company, a binding contract of insurance is effected on the basis of the application." (Syl. ¶ 4.)

Another case involving estoppel for failure to read the policy and, also, fraud and mistake in making the policy different from that for which the application was made and the question of reformation, is *Hammond v. Insurance Co.*, 100 Kan. 582, 165 Pac. 291, where it was held:

"Where a policy of insurance different from that applied for has been fraudulently issued, the recipient of the policy may, without reading it, assume that it conforms to the application; and an action thereon is not barred until two years after the fraud is discovered.

"Where fraud in issuing a policy of insurance and a mistake in the policy are alleged and reformation is asked, and where the evidence supports the allegations, the court is justified in reforming the policy and in rendering judgment thereon." (Syl. ¶¶ 1, 2.)

"An applicant for insurance, without knowledge to the contrary, may assume that the agent has prepared the application according to agreement and that the company has written the policy according to the application, and he is not negligent in failing to examine such instruments for errors and omissions." (*Pfiester v. Insurance Co.*, 85 Kan. 97, syl. ¶ 7, 116 Pac. 245.)

We think the insured had a right to assume, without reading the policy, that it conformed to the application and positive agreement he had made with the company's authorized soliciting agent, where this is not dependent upon conflicting testimony but is contained in the stipulation as a description of the kind of a policy that was being offered and accepted.

Appellant cites the recent case of *Supica v. Metropolitan Life Ins. Co.*, 137 Kan. 204, 19 P. 2d 465, where it was held the agent could not bind the company by taking a part instead of the whole premium due, and extending the policy, that being in effect a waiver of a requirement of the policy, which was not one of the duties of a soliciting and collecting agent.

The well-reasoned case of *Drogula v. Federal Life Ins. Co.*, 248 Mich. 645, is cited and strongly relied upon by appellant. It is very much like the case at bar, but holds that ten months after receiving the policy and after an accident occurred the insured was not equitably entitled to have the policy reformed to cover the oral representations of the agent. The concluding part of the opinion shows that it is based almost entirely upon the negligence of the insured in not reading the policy sooner. This is quite different from the

trend of the decisions on that question in this state, as shown by cases above cited. On the question of the right to reform the policy and recover thereon, see, also, *Palin v. Insurance Co.*, 92 Kan. 401, 140 Pac. 886; *Pfiester v. Insurance Co.*, supra; *Mercantile Co. v. Insurance Co.*, 101 Kan. 522, 168 Pac. 323; *Chambers v. North American Accident Ins. Co.*, 118 Kan. 494, 235 Pac. 859; 1 C. J. 420 and 32 C. J. 1140.

It is suggested that the decision of the trial court must have been on the second cause of action, because the judgment does not state that the policy was reformed. The journal entry of judgment is very brief, as set out in the abstract, but it shows that judgment was rendered "for the sum of $375 on plaintiff's first cause of action." The first was the reformation cause of action and the judgment upon that cause of action included the reformation therein asked.

The judgment is affirmed.