John E. REARDON, et al., Plaintiffs,

v.

Richard KRIMM, et al., Defendants.

Civ. A. No. 81-2089.

United States District Court,
D. Kansas.

March 25, 1982.

Robert J. Watson, City Atty., City of Kansas City, Kansas City, Kan., for plaintiffs.

Keith Werhan, Kevin Kovacs, Dept. of Justice, Washington, D. C., for defendants.

## MEMORANDUM & ORDER

SAFFELS, District Judge.

This action is an appeal by the City of Kansas City, Kansas, seeking judicial review of the final agency action of the Federal Insurance Administration [hereinafter FIA] setting the base-flood elevations for the City. Under the National Flood Insurance Act (42 U.S.C. 4001 et seq.) [hereinafter the Act], the FIA is charged with responsibility for making flood elevation determinations for purposes of land use control in communities which are identified as flood-prone.

This matter is before the Court on the motion of the FIA for summary judgment. It is the position of the FIA that, while the base-flood elevation determinations may be appealed by a community on the basis of their technical and scientific inaccuracy, the statutory scheme of the Act does not permit an appeal of the FIA's decision not to consider a bridge which is planned for construction as part of the topography of the area studied. The FIA also contends that the statutory scheme for appeals does not allow the City to appeal the boundaries of a floodway which were established by a process of negotiation with other affected communities.

The purpose of the Flood Insurance Program enacted by the Act, as amended in 1973, is to identify all flood-prone areas in the country, to promote local land use controls in order to minimize deaths and damage due to severe floods, reduce federal expenditures for disaster relief, and to provide flood insurance to local governments which adopt flood plain regulations meeting the approval of the FIA. For purposes of further implementing these goals, the Act requires, as a condition to the receipt of federal financial assistance, that all communities within the purview of the Act participate in the Flood Insurance Program.

Flood-prone areas are identified by the FIA on the basis of studies conducted by consultants on contract to the FIA. In this case, the Army Corps of Engineers conducted the flood insurance study. The study

was conducted to determine base-flood elevations in the area, and to reveal lands susceptible to being inundated by flood waters. Because one objective of the Act is to reduce property damage in flood-prone areas, land which is revealed to be susceptible to heavy flooding generally is subject to land use controls which eliminate industrial or residential improvements.

Once a community has been notified of the proposed flood elevation determinations, a right of appeal is provided by statute:

"... The sole basis for such appeal shall be the possession of knowledge or information indicating that the elevations being proposed by the Secretary with respect to an identified area having special flood hazards are *scientifically or technically incorrect*, and the sole relief which shall be granted under the authority of this section in the event that such appeal is sustained in accordance with subsection (e) or (f) of this section is a modification of the Secretary's proposed determination accordingly." 42 U.S.C. § 4104(b). [Emphasis added.]

Once a community has appealed, the Secretary:

"... shall review and take fully into account any *technical or scientific data* submitted by the community that tend to negate or contradict the information upon which his proposed determination is based. The Secretary shall resolve such appeal by consultation with officials of the local government involved, by administrative hearing, or by submission of the conflicting data to an independent scientific body or appropriate Federal agency for advice...." 42 U.S.C. § 4104(e). [Emphasis added.]

The Secretary's resolution of the community's appeal may, in turn, be appealed to the federal courts:

"Any appellant aggrieved by any final determination of the Secretary upon administrative appeal, as provided by this section, may appeal such determination to the United States district court for the district within which the community is located not more than sixty days after receipt of notice of such determination. The scope of review by the court shall be as provided by chapter 7 of Title 5...." 42 U.S.C. § 4104(g).

The City alleges that it filed formal appeal requests concerning the proposed flood elevations in regard to certain land within the city limits at Wolcott and Nearman Bend. The City alleges that it submitted scientific and technical data as part of its appeal that tended to negate and contradict the information upon which the FIA's proposed determinations were based. In particular, the City alleges that it put forth scientific and technical data which would require the FIA to consider a proposed bridge across the Missouri River on proposed Interstate 435 as being a structure which was already built and in existence as a part of the topography when the study was conducted.

This bridge was not in existence in 1976 when the study was conducted, and is not in existence in 1982, the date of this Memorandum and Order. The City maintains that had the bridge been considered "in place" for purposes of the study, five hundred (500) acres of land at Wolcott and Nearman Bend might have been allowed to be used for profitable industrial purposes. Such use has been precluded by the final boundaries of the proposed floodway.

The City alleges that it was formally notified on January 19, 1981, by Gloria Jimenez, then the Administrator of the FIA, that their appeal was being denied. The City alleges that on February 3, 1981, Richard Krimm, the Acting Director of the FIA, formally notified the City of the final flood elevation determinations. Thus, the City alleges that the FIA has made a final determination, from which lies an appeal to this Court.

The FIA denies that the City effectuated an appeal. Although the City formally objected to the proposed base flood elevations, and later concurred in an objection of the Kansas Department of Agriculture to the boundaries of the proposed floodway, the FIA contends that a community can only

challenge the scientific and technical accuracy of the determination themselves, and, therefore, the disputes over the floodway and bridge were outside the permitted scope of appeal.

■ The Court has examined the voluminous record submitted by both parties and finds the FIA's position must be sustained. The Court finds that the City did not take an administrative appeal, as that term is defined in the Act. While the City raised a vociferous objection to the FIA policy which precluded considering the proposed I–435 bridge to be "in place," the City did not base its objections on scientific or technical evidence, nor did the City question the scientific or technical accuracy of any FIA determination. The question of whether a proposed structure will be considered in place is policy-oriented and does not involve scientific or technical accuracy.

In similar fashion, the boundaries of the proposed floodway are products of negotiation among the communities affected, and are not set by the FIA by scientific or technical means. The City's challenge to the boundaries of the negotiated floodway did not bring into question the technical or scientific accuracy of the boundaries.

The City is attempting just the sort of unlimited appeal which the language of the Act forecloses. The Act limits appeals to issues of technical and scientific accuracy of the base flood level determinations. 42 U.S.C. § 4104. The limitation on appeals was the product of more debate and testimony than any other portion of the Act when it was being considered in Congress. 1973 U.S.Code & Adm.News, p. 3217. The decision by Congress to adopt such a limited scope of appeal was therefore not a hasty one, nor is it one which may be overlooked by the Court.

Despite recent attacks on the federal judiciary as attempting to govern by fiat and as ignoring the clear and unambiguous enactments of Congress, this case illustrates how infrequent such departures actually are. The argument that the statutorily prescribed procedure did not reach the "correct" result is both insidious and seductive.

Nonetheless, the Court ignores, as it must, plaintiff's argument that the Act should not be applied to the facts of this case according to the plain and literal meaning of the language Congress chose to use.

■ All statutes must be interpreted and applied according to the plain meaning of the language used and the intent of the legislative body which enacted it. Where a statute is clear in language, it will be applied according to its plain meaning, absent a clearly expressed legislative intent to the contrary. *Consumer Product Safety Commission v. GTE Sylvania, Inc.*, 447 U.S. 102, 100 S.Ct. 2051, 64 L.Ed.2d 766 (1980); *Perrin v. United States*, 444 U.S. 37, 100 S.Ct. 311, 62 L.Ed.2d 199 (1979).

In light of the fact that the City did not challenge the flood elevations on the basis of their scientific and technical accuracy at the administrative level, the Court concludes there was no appeal at the administrative level, as that term is defined by subsections (c), (d) and (e) of 42 U.S.C. § 4104. Inasmuch as an administrative appeal is a prerequisite to this Court's jurisdiction [42 U.S.C. § 4104(f) ], the City's appeal must be dismissed for lack of jurisdiction.

Accordingly, after the Court having examined the record and found the facts to be as stated herein, IT IS BY THE COURT ORDERED that defendants' motion for summary judgment is hereby granted. IT IS FURTHER ORDERED that the Clerk of this Court enter judgment for defendants, and all relief is hereby denied plaintiff.