The PILLSBURY COMPANY, a Delaware Corporation, Plaintiff,

v.

The ATCHISON, TOPEKA AND SANTA FE RAILWAY COMPANY, a Delaware Corporation, Defendant.

No. 81–4087.

United States District Court, D. Kansas.

July 14, 1982.

Gary D. McCallister, Davis, Unrein, Hummer & McCallister, Topeka, Kan., David F. Fisher, Minneapolis, Minn., for plaintiff.

J. B. Reeves, Roth A. Gatewood, T. R. Conklin, P. R. Hoferer, Topeka, Kan., for defendant.

## MEMORANDUM AND ORDER

ROGERS, District Judge.

This matter, requiring the interpretation and application of 28 U.S.C. § 1337(a), as amended, comes before this court on the motion of defendant Atchison, Topeka and Santa Fe Railway Company (Santa Fe) to dismiss. The plaintiff, Pillsbury, is seeking damages for delivery of consigned goods in contaminated condition under Section 20(11), Interstate Commerce Act, now codified as 49 U.S.C. § 11707. The contaminated cargo was fifteen shipments of flour products to Fort Wayne, Indiana from Atchison, Kansas in August and September 1978 and twenty-seven additional flour products shipments, having the same origin and destination, in May through September 1979. The shipments arrived infested with beetles and other vermin. Some had to be destroyed; others could be salvaged by fumigating. Each Shipment had a separate bill of lading, none of which exceeded $10,000. Pillsbury seeks $26,126.89 in aggregate damages.

Santa Fe claims that because none of the bills of lading exceeds $10,000, this court does not have subject matter jurisdiction. 28 U.S.C. § 1337(a). Pillsbury replies that this court has federal question jurisdiction under 28 U.S.C. § 1331, irrespective of the amount in controversy, and that its claims can be aggregated to reach the jurisdictional amount without doing violence to the legislative intent. We have found no decisions considering the precise issue presented by the parties.

As amended on October 20, 1978, Section 1337(a) provides:

> The district courts shall have original jurisdiction of any civil action or proceeding arising under any Act of Congress regulating commerce or protecting trade and commerce against restraint and monopolies: *Provided, however,* That the district courts shall have original jurisdiction of an action brought under section 20(11) of part I of the Interstate Commerce Act (49 U.S.C. 20(11)) or section 219 of part II of such Act (49 U.S.C. 319), only if the matter in controversy for each receipt or bill of lading exceeds $10,000, exclusive of interest and costs.

This amendment added a $10,000 amount in controversy requirement for actions under 49 U.S.C. § 20(11), now 49 U.S.C. § 11707. The purpose of this amendment was to prevent the abuse of the federal judicial process by overloading the federal courts with small freight claims. Because of the availability of a federal forum, certain courts,

especially in Massachusetts, were innundated with cases arising under Section 20(11) (the Carmack amendment). As of June 30, 1975, 64% of the pending cases in the district of Massachusetts were brought under the Carmack amendment. The Congress further noted that the mass filing of damage claims for small amounts, which claims were rarely tried, placed an intolerable burden on that district and forced its courts to function as a clearinghouse for negotiation and settlement of private debts. *See,* S.Rep.No. 95–117, 1978 U.S.Code Cong. & Admin.News 3569, 3612–3613.

■■ In construing a statute, the court first looks to the language of the statute. Where the language is clear and the purpose appears with reasonable certainty, there is no need to resort to further rules of construction to ascertain its meaning. *Thompson v. Kerr-McGee Refining Co.,* 660 F.2d 1380, 1390 (10th Cir. 1981). The statute is clear that the controversy for each receipt or bill of lading must exceed $10,-000. If Congress had intended to permit aggregation of claims, the word "each" should have been omitted.

■ Pillsbury claims that the statute is arbitrary and irrational because it premises jurisdiction upon the issuance of a receipt or bill of lading. At the outset, we note that jurisdiction does not depend on the amount on the face of the receipt or bill of lading; if a shipment generated a controversy exceeding $10,000, there is nothing in Section 1337(a) which would prevent bringing the claim in federal court. Furthermore, it is not for this court to sit as a super legislature and expand its jurisdiction by determining that the amount in controversy requirement should be waived for certain mass shippers. The limits of the court's jurisdiction are determined by Congress, not by the court itself. *Basso v. Utah Power & Light Co.,* 495 F.2d 906 (10th Cir. 1974). We would suppose that the bill of lading language serves to identify and delineate the extent of the shipment subject to the controversy. In the rare instance where no bill of lading is issued (and the wise shipper would do well to condition consignment upon its issuance), we believe a federal court could substitute the words "single shipment" for "receipt or bill of lading" without doing violence to the congressional intent. If not, the state courts would still be available to try the claims. Be that as it may, we are not directly confronted with that question because bills of lading were issued for each shipment herein.

The plaintiff argues that the jurisdictional limitation in Section 1337(a), which specifically refers to Section 20(11), does not apply to Pillsbury because Section 20(11) had been repealed three days before Section 1337 was amended. According to the plaintiff, the 1337(a) limitation should not apply because this action is brought under Section 11707 instead of Section 20(11).

■ The Congressional intent in enacting Public Law 95–473, which revised the Interstate Commerce Act, was to revise, codify, and enact without substantive change the Interstate Commerce Act. *Atchison, Topeka, & Santa Fe Ry. Co. v. Lennen,* 640 F.2d 255, 258 (10th Cir. 1981). Because there has been no substantive change in the Interstate Commerce Act, the plaintiff's cause of action can be deemed to have been brought under Section 20(11). Section 3(b) of Pub.L. 95–473, 92 Stat. 1466, supports our conclusion:

A reference to a law replaced by sections 1 and 2 of this Act, including a reference in a regulation, order, or other law, is deemed to refer to the corresponding provision enacted by this Act.

Section 1 of Public Law 95–473 replaced Section 20(11) with Section 11707.

■ Pillsbury's argument that this court has jurisdiction under Section 1331, irrespective of Section 1337(a), is without merit. Applying Pillsbury's argument, any claim, however small, could still be brought in federal court if it involved the Interstate Commerce Act because the amount in controversy requirement has been removed from Section 1331. Such an interpretation would totally undermine the purpose of the 1978 amendment to Section 1337 and suggest that Congress miserably failed in its

attempt to alleviate that burden on the federal court's docket. Furthermore, courts have held that jurisdiction cannot be premised on Section 1331 where a more specific statute would remove jurisdiction or grant jurisdiction to another court. *See, J. C. Penney Co. v. United States Treasury Dept.,* 439 F.2d 63, 68 (2nd Cir. 1971); *Eastern States Petroleum Corp. v. Rogers,* 108 U.S.App.D.C. 63, 280 F.2d 611, 613 (1960); *Akins v. Saxbe,* 380 F.Supp. 1210, 1217 (D.Me.1974) (1331 does not grant district court jurisdiction over customs which is granted to customs court under § 1340). For Section 1337(a) to have any effect, it must be viewed as a specific exception, similar to Section 1340, to the broad grant of jurisdiction in Section 1331. *Cf., Akins v. Saxbe, supra* (same reasoning applies to Section 1337) (dicta).

Accordingly, Case No. 81-4087 is dismissed for lack of subject matter jurisdiction.