**EARTH SCIENTISTS (PETRO SERVICES) LTD., Plaintiff,**

v.

**UNITED STATES FIDELITY & GUARANTY COMPANY, Defendant.**

**Civ. A. No. 84–2204.**

United States District Court, D. Kansas.

Oct. 17, 1985.

---

Jerry K. Levy, Levy, Smith Garrett & Smith, Topeka, Kan., for plaintiff.

H.W. Fanning and Arthur S. Chalmers, Kahrs, Nelson, Fanning, Hite & Kellogg, Wichita, Kan., for defendant.

## MEMORANDUM AND ORDER

EARL E. O'CONNOR, Chief Judge.

This matter is presently before the court on defendant's motions to dismiss and for summary judgment. This diversity action arises out of the alleged breach of an insurance policy entered into by plaintiff Earth Scientists (Petro Services) Ltd. [hereinafter Earth Scientists] with defendant United States Fidelity & Guaranty Company [hereinafter USF & G] to insure, among other things, plaintiff's drilling rig for collapse.

Plaintiff's complaint sets forth the following four claims: (1) breach of contract; (2) violation of the Kansas Uniform Trade Practices Act; (3) fraud; and (4) negligence, carelessness, intentional, willful, malicious and outrageous actions. Plaintiff seeks actual and punitive damages, and consequential damages in the nature of lost profits.

For purposes of this motion, the uncontroverted material facts in this case are as follows:

Plaintiff Earth Scientists is a Kansas corporation, which, at all times pertinent to this action, was engaged in the oil and gas drilling business. A.W. Karns, President of Earth Scientists, contacted C.L. Kinnard, an insurance agent with Gilmore, Dennis and Miller Insurance, Inc., to purchase an insurance policy. Karns specifically requested coverage for collapse or overturn of the company's drilling rigs. Previously, one of plaintiff's drilling rigs had overturned and plaintiff's insurance (with a company other than defendant) had not covered the loss.

Kinnard had an agency agreement with defendant USF & G, a Maryland corporation, to solicit customers and submit applications for policies to USF & G. Kinnard recommended to plaintiff that it purchase defendant's policy (the policy involved in this action) and plaintiff did so. The policy expressly covered the peril of the derrick

or mast collapsing. The policy did not, however, define the term "collapse." Kinnard never informed defendant of plaintiff's desire to insure loss of its rigs caused by overturns, nor did plaintiff ever tell defendant of its previous rig overturn. In turn, defendant never told plaintiff that such an overturn would be covered.

On December 13, 1983, the insured rig fell over and was damaged. On January 16, 1984, defendant formally denied coverage of the incident. Disatisfied with defendant's failure to pay the claim, plaintiff contacted the Kansas State Insurance Commissioner's Office. On March 1, that office admonished defendant for denying liability when liability was "reasonably clear." On April 11, of that same year, defendant offered plaintiff a sum between $32,500 and $35,000 to settle the claim. Plaintiff rejected the offer. Consequently, plaintiff filed this lawsuit. Defendant admits in its answer coverage of the rig's collapse and that it owes the cost to repair or replace the rig for actual cost value.

I. *Motion to Dismiss Plaintiff's Claim Under the Kansas Uniform Trade Practices Act.*

Defendant moves the court to dismiss plaintiff's claim for violation of the Kansas Uniform Trade Practices Act (KUTPA), K.S.A. 40–2401 to –2414 (1981 & Supp. 1984), for failure to state a claim upon which relief can be granted. Defendant maintains that the Act provides no private cause of action in favor of an individual for an insurer's violations of KUTPA.

1. K.S.A. 40–2404 provides:
The following are hereby defined as unfair methods of competition and unfair or deceptive acts or practices in the business of insurance:
(9) *Unfair claim settlement practices.* Committing or performing with such frequency as to indicate a general business practice of any of the following:

. . . . .

Plaintiff claims that defendant violated the following subsections:
(a) Misrepresenting pertinent facts or insurance policy provisions relating to coverages at issue;

The court may not dismiss plaintiff's complaint for failure to state a claim "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957). In considering a motion to dismiss, the factual allegations of the complaint must be taken as true and all reasonable inferences from them must be indulged in favor of the plaintiff. *Mitchell v. King,* 537 F.2d 385, 386 (10th Cir.1976).

After reviewing the Kansas Uniform Trade Practices Act, the court is convinced that plaintiff's claim for damages for defendant's alleged violations of K.S.A. 40–2404(9)[1] must be dismissed for the following reasons.

First, the court concludes that the overriding goal of the statute is to provide the public with the benefits that flow from a well regulated insurance industry. According to the Act itself:

The purpose of this Act is to regulate trade practices in the business of insurance ... by defining, or providing for the determination of, all such practices in this state which constitute unfair methods of competition or unfair or deceptive acts or practices and by prohibiting the trade practices so defined or determined. K.S.A. 40–2401.

Second, the court concludes that the plain meaning of the statute is clear in vesting all power under the Act in the Commissioner of Insurance. The Commissioner has the sole duty to enforce the Act.

(d) refusing to pay claims without conducting a reasonable investigation based upon all available information;
(f) not attempting in good faith to effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear; and
(g) compelling insureds to institute litigation to recover amounts due under an insurance policy by offering substantially less than the amounts ultimately recovered in actions brought by such insureds.

There is no language purporting to create a private cause of action. The pertinent language (with emphasis added) is as follows:

K.S.A. 40–2402(b):

"Commissioner" shall mean the *commissioner of insurance* of this state.

K.S.A. 40–2405:

The *commissioner shall have power to examine and investigate* into the affairs of every person engaged in the business of insurance....

K.S.A. 40–2406:

(a) Whenever the *commissioner* shall have reason to believe that any such person has been engaged or is engaging in this state in any unfair method of competition or any unfair or deceptive act or practice ... and that *a proceeding by the commissioner* in respect thereto would be to the *interest of the public, the commissioner* shall issue and serve upon such person a statement of the charges in that respect and a notice of a hearing thereon....

(d) The *commissioner,* upon such hearing, may administer oaths, examine and cross-examine witnesses, ....

K.S.A. 40–2407(a):

[T]he *commissioner* ... shall issue and cause to be served upon the person charged with the violation a copy of such findings and *an order requiring such person to cease and desist* ... [and may order]:

(1) Payment of a *monetary penalty* of not more than one hundred dollars ($100)...;

(2) suspension or revocation of the person's license ...; or

(3) redress of the injury by requiring the *refund of any premiums* paid by and/or the payment of any moneys withheld from, any consumer and/or appropriate *public notification of the violation.*

K.S.A. 40–2411:

Any person who violates a *cease and desist order of the commissioner* ... [may be subject to]:

(a) A *monetary penalty* of not more than ten thousand dollars ($10,000) ...;

(b) *suspension* or *revocation* of such person's license;

(c) redress of the injury by requiring the *refund of any premiums* paid by and/or the payment of any moneys withheld from, any consumer and/or appropriate *public notification of violation.*

K.S.A. 40–2412:

The *powers vested in the commissioner* by this act, shall be additional to any other powers to enforce any *penalties, fines* or *forfeitures* authorized by law with respect to the methods, acts and practices hereby declared to be unfair or deceptive.

Nowhere in the Act is there a provision for the recovery of monetary damages, which the plaintiff in this case is seeking. As the above quoted sections reveal, the Act provides only for "cease and desist" orders, $100 monetary penalties, suspension of the insurer's license, refund of any premium and public notification of the insurer's violation, none of which the plaintiff is seeking.

In *Spencer v. Aetna Life & Casualty Ins. Co.,* 227 Kan. 914, 611 P.2d 149 (1980), the Kansas Supreme Court discussed the provisions of KUTPA and the insured's remedies for breach of a first party insurance contract. The court was not specifically addressing the issue of whether the Act gives rise to a private cause of action, but rather whether the tort of "bad faith" was actionable in Kansas. Nevertheless, the court's rationale for denying a cause of action for bad faith applies equally as well to the private cause of action issue. In refusing to recognize the tort of bad faith, the court stated:

We are of the opinion the legislature has intended to provide a remedy for an insured who has problems with his insurance company. He can maintain an action on the contract for his policy benefits, with costs, interest and attorneys' fees under arbitrary circumstances. He

may also report the company to the Department of Insurance under the Uniform Trade Practices Act for improper handling of claims pursuant to K.S.A. 40–2404(9). The company's actions are reviewable by the Department and punishable if found improper. The legislature has provided several remedies for an aggrieved insured and has dealt with the question of good faith first party claims. Statutory law does not indicate the legislature intended damages for emotional suffering to be recoverable by an aggrieved insured through a tort of bad faith. Where the legislature has provided such detailed and effective remedies, we find it undesirable for us to expand those remedies by judicial decree.

*Id.* at 926, 611 P.2d 149.

■ This language leads us to conclude that the Kansas Supreme Court would not expand KUTPA to imply a private cause of action. The *Spencer* court makes it clear that the aggrieved insured has only two remedies to pursue—he may file suit for breach of the insurance contract and/or he may report the insurer to the Insurance Commissioner who may proceed under the Act.

Plaintiff argues that the court in *Spencer* expressly left the door open for a private cause of action if the plaintiff made a definitive showing that the legislative remedies were inadequate. We believe plaintiff is misinterpreting the *Spencer* court's conclusions. The court stated:

The legislature has recognized the public interest nature of the insurance industry and has also recognized policy holders require protection because of their inequitable bargaining position. The penalties, including fines and imprisonment, and imposition of attorneys' fees are adequate to protect the public from the actions of a recalcitrant insurer in first party cases. We do not say the legislative remedy is exclusive but in the absence of a more definitive showing of inadequacy of the remedy than we have before us at this time, we hold the reme-

dies are adequate to force compliance with the terms of insurance contracts. *Id.*

This language implies that the Kansas Supreme Court might expand the Kansas common law to include a tort of bad faith, but only upon a showing that the legislative remedies were inadequate. The court is not implying, as plaintiff contends, that it would expand KUTPA to provide a private cause of action for damages.

The Kansas Uniform Trade Practices Act is patterned after the National Association of Insurance Commissioners (NAIC) model legislation. *See* K.A.R. 40–1–34 (1985). Since 1971, a majority of the states have enacted legislation fashioned after the model law. Houser, *The Unfair Claims Settlement Practices Act,* 15 The Forum 336 (1979). Most of these states have refused to imply a private cause of action. *See, e.g., Scroggins v. Allstate Ins. Co.,* 74 Ill. App.3d 1027, 30 Ill.Dec. 682, 393 N.E.2d 718 (1979); *Retail Clerk's Welfare Fund v. Continental Casualty Co.,* 71 N.J.Super. 221, 176 A.2d 524 (1961); *Thorp v. Wabash Life Ins. Co.,* No. 78–347 (D.Ore., *unpublished,* Aug. 23, 1978) (Oregon law); *D'Ambrosio v. Pennsylvania National Mutual Cas. Ins. Co.,* 494 Pa. 501, 431 A.2d 966 (1981); *Russell v. Hartford Cas. Ins. Co.,* 548 S.W.2d 737 (Tex.Ct.App.1977); *Wilder v. Aetna Life & Cas. Ins. Co.,* 140 Vt. 16, 433 A.2d 309 (1981); *Tank v. State Farm Fire & Cas. Co.,* 38 Wash.App. 438, 686 P.2d 1127 (1984); *Kranzush v. Badger State Mutual Cas. Co.,* 103 Wis.2d 56, 307 N.W.2d 256 (1981).

Three states have recognized a private cause of action under their laws. *See Royal Globe Ins. Co. v. Superior Court,* 23 Cal.3d 880, 153 Cal.Rptr. 842, 592 P.2d 329 (1975); *Klaudt v. Fink,* 658 P.2d 1065 (Mont.1983); *Jenkins v. J.C. Penney Casualty Ins. Co.,* 280 S.E.2d 252 (W.Va.1981). Two of these cases rely on language similar to that found at K.S.A. 40–2408(d) to imply a private cause of action. This language is to the effect that the administrative penalties and cease and desist orders found in the Act do not prevent the imposi-

tion of liability or penalty against the insurer for violation of laws under the Act or any other law. *See Klaudt*, 658 P.2d at 1067 (quoting M.C.A. 33–18–1004(5)); *Royal Globe*, 592 P.2d at 332 (quoting Cal.Ins. Code 790.09 (West)). We, however, do not find that this language supports a private cause of action. The Act merely allows the imposition of liability under any other existing statutes or common law grounds; it does not create an additional private cause of action from the terms of the Act.

The only other state to recognize a private cause of action implies the action not from its Unfair Trade Practices Act but from another of its state statutes. In *Jenkins, supra*, the West Virginia Supreme Court relied on a state statute that expressly permits the recovery of damages sustained by reason of the violation of any statute, even if the statute provides only for a penalty. 280 S.E.2d at 255, 257 (citing W.Va.Code 55–7–9). Kansas, however, has no such law and, thus, the *Jenkins* case is not applicable here.

■ It is a fundamental rule of statutory construction that all statutes must be interpreted and applied according to the plain meaning of the language used and the intent of the legislative body that enacted it. *Reardon v. Krimm*, 541 F.Supp. 187, 189 (D.Kan.1982); *State v. Flummerfelt*, 235 Kan. 609, 612, 684 P.2d 363 (1984). The plain meaning of KUTPA and the legislature's intent in enacting it is clear; it does not provide a private cause of action. Since the statute's language is clear and its purpose appears reasonable, there is no need to resort to further rules of construction to ascertain its meaning. *Pillsbury Co. v. Atchison, Topeka and Santa Fe Ry. Co.*, 548 F.Supp. 28, 30 (D.Kan.1982). The court notes, however, that two other rules of statutory construction support its conclusion that the Act does not provide a private cause of action.

■ First, the rule expressed in the maxim *expressio unius* applies. Two statutes in Chapter 40 expressly provide for the award of attorneys' fees to a private plaintiff who receives a judgment against an insurance company. *See* K.S.A. 40–256,

40–908 (1981). The express mention of a private remedy in these two statutes and the legislature's failure to provide for such private remedies in the KUTPA sections of Chapter 40 imply that the legislature intended to exclude any private remedies under KUTPA. Additionally, the Kansas Legislature has specifically provided for private causes of action in similar-type statutes enacted to protect the public. *See, e.g.*, Open Records Act, K.S.A. 45–222 (Supp.1984); Public Meetings Act, K.S.A. 75–4320 (1984); Uniform Trade Secrets Act, K.S.A. 60–3320 to 3330 (1983); Restraint of Trade Statutes, K.S.A. 50–108, –115, –137 (1983); Kansas Consumer Protection Act, K.S.A. 50–634 (1983); and Uniform Consumer Credit Code, K.S.A. 16a–5–203 (1981). It is clear that had the Kansas Legislature intended a private cause of action for KUTPA violations, it would have expressly provided for the same.

A second rule of statutory construction provides that when the Kansas Legislature adopts a statute from a uniform law, it carries with it the construction placed on that statute by the drafters, except when contrary to the Kansas Constitution or public policy. *Matter of Reed's Estate*, 233 Kan. 531, 541, 664 P.2d 824, 832, *cert. denied*, 464 U.S. 978, 104 S.Ct. 417, 78 L.Ed.2d 354 (1983). As noted earlier, KUTPA was patterned after model legislation drafted by the National Association of Insurance Commissioners. The NAIC has consistently argued that the legislation was not intended to create a private cause of action. Schroer & Hulsey, *Unfair Claims Settlements*, 5 J. KTLA No. 4, 8, 8–9 (1982); Shernoff, *Insurance Company Bad Faith Law*, Trial, May 1981 at 23–24.

In light of the foregoing, the court concludes that the Kansas Uniform Trade Practices Act does not provide a private cause of action. Therefore, plaintiff's claim against defendant for violation of section 40–2404(9) under the Act must be dismissed.

## II. *Motion for Summary Judgment.*

Federal Rule of Civil Procedure 56(c) provides that the court grant summary judg-

ment when the matters considered by the court disclose that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The court must look at the record in the light most favorable to the party opposing the motion. *Prochaska v. Marcoux,* 632 F.2d 848, 850 (10th Cir.1980), *cert. denied,* 451 U.S. 984, 101 S.Ct. 2316, 68 L.Ed.2d 841 (1981). Before summary judgment may be granted, the moving party must establish that it is entitled to summary judgment beyond a reasonable doubt. *Ellis v. El Paso Natural Gas Co.,* 754 F.2d 884, 885 (10th Cir.1985). Once the moving party has properly supported his motion, however, the opposing party must respond with specific facts that demonstrate the existence of a genuine factual issue to be tried, *Otteson v. United States,* 622 F.2d 516, 520 (10th Cir.1980), and may not rest upon the mere allegations or denials of his pleading. Fed.R.Civ.P. 56(e).

### A. *Fraud.*

Defendant moves for summary judgment on plaintiff's claim that defendant fraudulently induced plaintiff to purchase its policy. Plaintiff's claim for fraud is based upon two grounds. First, plaintiff contends that agent Kinnard misrepresented that rig overturns were covered by defendant's policy. Second, plaintiff contends that the language of the insurance policy itself constitutes a misrepresentation.

■ When seeking to recover for fraud, a plaintiff must prove the following elements: (1) the statement of fact was false; (2) the party making the statement knew it was false; (3) the statement was made with the intent to deceive or made recklessly with a disregard for truth; and (4) the plaintiff justifiably relied on the statement and sustained injury. *Lentz Plumbing Co. v. Fee,* 235 Kan. 266, 268, 679 P.2d 736, 742 (1984); *Nordstrom v. Miller,* 227 Kan. 59, 65, 605 P.2d 545, 551–52 (1980).

■ Defendant first argues that it may not be held liable for any alleged misrepresentations by agent Kinnard because he was merely defendant's soliciting agent. According to defendant, an insurance com-

pany is not liable for fraudulent representations of such an agent. The court disagrees. The law in Kansas provides that an insurance company's soliciting agent binds the company by his representations when the insured relies and acts upon them. *Iowa National Mutual Ins. Co. v. City of Osawatomie,* 458 F.2d 1124, 1126 (10th Cir.1972); *Stewart v. Commonwealth Casualty Co.,* 137 Kan. 919, 922, 22 P.2d 435, 437 (1933); *Nichols v. Commonwealth Casualty Co.,* 113 Kan. 484, 488, 214 P. 1111, 1112 (1923). When the soliciting agent makes representations to the applicant for insurance as to the scope of the policy, or the risks covered by it, the company is estopped from denying such representations. *Stewart,* 137 Kan. at 922, 22 P.2d at 437.

Defendant relies on *Rosedale Securities Co. v. Home Ins. Co.,* 120 Kan. 415, 243 P. 1023 (1926), in arguing that it cannot be held liable for Kinnard's misrepresentations. This reliance on *Rosedale,* however, is misplaced. *Rosedale* deals only with independent brokers and not soliciting agents. It holds that an *independent broker* is the agent of the insured rather than the insurer for the purpose of obtaining the policy. *Id.* at 421–22, 243 P. at 1026. Thus, an insurer may not be held liable for any representations made by the broker. *Rosedale* defines an insurance broker as "one who solicits contracts from the public under no employment from any special company, but, having secured an order, places the insurance with a company selected by the insured, or, in the absence of any selection by him, then with the company selected by such broker." 120 Kan. at 415 Syl. ¶ 1, 243 P. at 1023.

■ A *soliciting agent,* on the other hand, is defined as one who takes applications for insurance, forwards them to the company that issued the policy, collects the premiums and delivers the policies to the insured. *Pettijohn v. The Saint Paul Fire and Marine Ins. Co.,* 100 Kan. 482, 485, 164 P. 1096, 1097 (1917). A soliciting agent is not, however, a general agent of the insurer and has no authority to accept no-

tices, make agreements, or waive provisions in the contract. *Id.*

Therefore, it is clear that if Kinnard is a soliciting agent of defendant, then defendant will be imputed with knowledge of his representations. If Kinnard made the representation that rig overturns would be covered, knowing that the defendant would not in fact cover them, then defendant may be held vicariously liable for Kinnard's misrepresentation. Conversely, defendant may be held liable in its own right for misrepresentation if it entered into the contract with the intent not to cover overturns when its soliciting agent had informed plaintiff of such coverage.

■ Plaintiff has clearly raised genuine issues of material fact with respect to whether Kinnard was a soliciting agent. In a written agency agreement between the defendant and Kinnard, defendant granted "authority to the Agent (Kinnard) ... to solicit and submit applications, ... to issue and deliver policies ... to collect and receipt for premiums thereon and to retain [commissions] out of premiums collected and paid over to the Company...." Exhibit B, Plaintiff's Memorandum. The Company also agreed to indemnify Kinnard for any liability caused by the Company. *Id.* Furthermore, defendant itself claims that Kinnard is a soliciting agent in one portion of its memorandum and an independent agent in another.

■ To prevail against defendant's motion for summary judgment, however, plaintiff must also set forth circumstances that would support an inference of wrongful intent at the time of making the representation. *Young v. Hecht*, 3 Kan.App.2d 510, 515, 597 P.2d 682, 688, *pet. for review denied*, 226 Kan. 793 (1979). Mere nonperformance of the contract is not enough. *Id. See also Edwards v. Phillips Petroleum Co.*, 187 Kan. 656, 660, 360 P.2d 23, 26 (1961). The court concludes that defendant has shown sufficient facts to raise the issue of whether defendant had the necessary fraudulent intent. The fact that defendant *now* admits coverage under the policy for overturns is not determinative of whether defendant had the intent to cover

overturns when it entered into the contract. The court will therefore deny defendant's motion for summary judgment with respect to plaintiff's claim of fraud.

B. *Negligence, Carelessness, Intentional, Willful, Malicious and Outrageous Actions.*

■ Defendant moves for summary judgment on plaintiff's fourth claim for negligence and intentional, willful, malicious and outrageous conduct. The court first concludes that summary judgment is proper against plaintiff's claim of negligence. In *Guarantee Abstract & Title Co. v. Interstate Fire & Cas. Co.*, 232 Kan. 76, 652 P.2d 665 (1982), the Kansas Supreme Court held that an insured may not bring an action for negligence in addition to its breach of the insurance contract when the insurer failed to settle and appeal a third-party action. The court stated that "a claim that an insurer acted negligently in performing its contractual duty to defend on behalf of the insured does not create a tort action or alter the measure of damages which may be recovered." *Id.* at 81, 652 P.2d at 669.

■ The court also concludes that summary judgment is proper against plaintiff's claims for intentional, willful or malicious conduct. As discussed earlier, the Kansas Supreme Court rejected the tort of bad faith and claims for these kinds of damages in *Spencer v. Aetna Life & Cas. Ins. Co.*, 227 Kan. 914, 611 P.2d 149 (1980).

■ This court, however, has interpreted *Spencer* as leaving open the possibility that a plaintiff might recover damages for outrage. *See Reese v. State Farm Fire & Cas. Co.*, No. 83–2445 (D.Kan., *unpublished*, Jan. 2, 1985). The elements that must be established to constitute the tort of outrage are:

(1) The conduct of the defendant must be intentional or in reckless disregard of plaintiff;

(2) the conduct must be extreme and outrageous;

(3) a causal connection must exist between defendant's conduct and plaintiff's mental distress; and

(4) plaintiff's mental distress must be extreme and severe.

*Hoard v. Shawnee Mission Medical Center,* 233 Kan. 267, 280, 662 P.2d 1214, 1223 (1983) (citing *Roberts v. Saylor,* 230 Kan. 289, 292, 637 P.2d 1175, 1179 (1981).

 As a threshold requirement, the court must determine that the conduct was extreme and outrageous and that the plaintiff suffered such severe emotional distress that the law must intervene. *Roberts,* 230 Kan. at 292–93, 637 P.2d at 1180. The court concludes that in this case the tort of outrage is inapplicable because the plaintiff is a corporation. A corporation cannot suffer severe emotional distress. *See Wilson v. Colonial Penn Life Ins. Co.,* 454 F.Supp. 1208, 1212, n. 9 (D.Minn.1978) (plaintiff bank was incapable of suffering emotional distress and thus had no cause of action for bad faith or malicious insurance settlement). The court therefore concludes that summary judgment in favor of defendant on plaintiff's fourth claim of negligence, carelessness, intentional, willful, malicious and outrageous actions is proper.

#### C. *Consequential Damages.*

Plaintiff's fourth claim also contains a claim for consequential damages. Although the court will enter summary judgment in favor of defendant on plaintiff's fourth claim for negligence and intentional conduct, the court will allow plaintiff to retain its claim for consequential damages in terms of lost profits. The pre-trial order states that, among other damages, plaintiff is seeking damages for loss of profits. Since the lost profits claim is not tied specifically in the pre-trial order to the above-mentioned fourth claim, summary judgment against the claim for lost profits is not required. Plaintiff will be allowed to retain its claim for lost profits only in conjunction with its breach of contract claim.

Defendant argues that, as a matter of law, lost profits are not recoverable for breach of an insurance contract. Defend-

ant relies on the following language in *Spencer v. Aetna Life & Cas., supra:*

> Does Kansas recognize the tort of "bad faith"? ... In jurisdictions where bad faith has been adopted, it applies only as a remedy for an insured who feels mistreated at the hands of his insurance carrier. It has been noted that:
>
> "Traditionally insurance policies were regarded as contracts for the payment of money upon the occurrence of specific contemplated risks. In an action for breach of an insurance contract, the plaintiff's recovery was limited to the benefits due under the contract plus interest. He could not recover damages for economic loss, emotional distress, or punitive damages regardless of injury to his health, feelings, reputation, or property; such damages were considered too remote." Murphy, *The Emerging Fiduciary Obligations and Strict Liability in Insurance Law,* 14 Cal.W.L.Rev. 358 (1978).
>
> The traditional rule limited an insured to contract remedies which are the face amount of the policy plus interest. The growing public awareness, however, of abusive delays by insurance companies in paying legitimate claims has given rise to the demand for a vehicle to recompense the injured for his damages. See Savage, *The Availability of Excess Damages for Wrongful Refusal to Honor First Party Insurance Claims—An Emerging Trend,* 45 Fordham L.Rev. 164, 166 (1972).

227 Kan. 914, 916, 611 P.2d 149, 151 (1980).

We disagree with defendant's interpretation. Taken in context of the *Spencer* court's discussion of the tort of bad faith, we conclude that the court was merely referring to a general, traditional rule and not necessarily to the rule in Kansas. The court goes on to state the rule in Kansas: "Let us now turn to Kansas law. We have traditionally held that only contractual damages are available for breach of an insurance contract...." *Id.* at 920, 611 P.2d at 153. The court cites with approval *Moffet v. Kansas City Fire & Marine Ins.*

*Co.*, 173 Kan. 52, 244 P.2d 228 (1952), in which a plaintiff sued its insurer who wilfully refused to pay him for damages sustained. The *Spencer* court quotes: "As a general rule, damages for breach of contract are limited to pecuniary loss sustained." 227 Kan. at 920, 611 P.2d at 153 (quoting 173 Kan. at 57, 244 P.2d at 233).

A review of other Kansas cases reveals that the general rule in Kansas is clearly that the damages recoverable for a breach of an insurance contract are the same as those available for breach of contract. *See, e.g., Guarantee Abstract & Title Co. v. Interstate Fire & Casualty Co.*, 232 Kan. 76, 79, 652 P.2d 665 (1982); *Hass v. Preferred Risk Mutual Ins. Co.*, 214 Kan. 747, 752, 522 P.2d 438, 442 (1974); *Hochman v. American Family Ins. Co.*, 9 Kan. App.2d 151, 153–54, 673 P.2d 1200, 1202–03 (1984).

In *Kansas State Bank v. Overseas Motosport, Inc.*, 222 Kan. 26, 563 P.2d 414 (1977), the Kansas Supreme Court stated the general rule for determining damages available in an action for breach of contract:

> We have long followed the rule of *Hadley v. Baxendale* [9 Exch. 341, 156 Eng. Reprint 145, 5 Eng. Rule Cas. 502 (1854)] Simply stated, the rule is that damages recoverable for breach of contract are limited to those damages which may fairly be considered as arising, in the usual course of things, from the breach itself, or as may reasonably be assumed to have been within the contemplation of both parties as the probable result of the breach.

222 Kan. at 27, 563 P.2d at 415 (citations omitted).

Thus, under this rule, consequential damages may be recovered. In only one case, however, has a Kansas court specifically addressed the issue of consequential damages for breach of an insurance contract. In *Hochman v. American Family Ins. Co.*, 9 Kan.App.2d 151, 154, 673 P.2d 1200, 1203 (1984), the Kansas Court of Appeals held that, in an action against an insurance company to recover the cost of repairs to an insured's combine, interest incurred by the insured on money borrowed for repairs was recoverable as consequential damages. In *Hochman*, the defendant insurer had breached its insurance contract by refusing to pay for repairs on the damaged combine. The plaintiffs were farmers who needed their combine for farming. Because the defendant refused to pay on the policy, plaintiffs were forced to borrow money for the repairs from the bank, thereby incurring interest. The court held that the interest debt arose in the usual course of things and directly from the breach, and, thus, was recoverable as consequential damages. *Id.*

▪ It follows, then, that an insured is entitled to state a claim for recovery of lost profits if he can show that the lost profits arose in the usual course of things and directly from the defendant's failure to pay on the policy. As a general rule, to recover such losses, a plaintiff must prove the lost profits with "reasonable certainty" and show that they "may reasonably be considered to have been within the contemplation of the parties." *Vickers v. Wichita State University*, 213 Kan. 614, 618, 518 P.2d 512, 515 (1974). Furthermore, "[r]ecovery for loss of profits caused by a breach of contract depends upon the facts and circumstances of each particular case." *Id.*

▪ The plaintiff in this case claims that because of defendant's failure to cover the loss of its rig, plaintiff lost income from its scheduled drilling contracts and consequently was forced to close down its operations. Plaintiff claims it was not in a position to buy a new rig and that a rental rig was not available. The court concludes that there are material issues of fact to be resolved on this issue and that with respect to plaintiff's claim of breach of contract, plaintiff is entitled to present the issue of whether its lost profits were a consequence of the alleged breach and were within the parties' contemplation.

IT IS THEREFORE ORDERED that defendant's motion for summary judgment with respect to plaintiff's claims of negligence, carelessness, intentional, willful,

malicious and outrageous actions be and hereby is granted. Plaintiff, however, will be permitted to retain its claim for lost profits with respect to its breach of contract claim.

IT IS FURTHER ORDERED that defendant's motion to dismiss for failure to state a claim with respect to plaintiff's claim for violation of the Kansas Uniform Trade Practices Act be and hereby is granted.

IT IS FURTHER ORDERED that defendant's motion for summary judgment with respect to plaintiff's claim of fraud be and hereby is denied.