(353 P.3d 455)

No. 111,769

SAMUEL R. JAHNKE AND SONS AND MARY K. JAHNKE, EXECUTOR OF THE ESTATE OF SAMUEL R. JAHNKE, *Appellees*, v. BLUE CROSS AND BLUE SHIELD OF KANSAS, INC., *Appellant*.

Opinion filed June 26, 2015.

*Jeremy K. Schrag*, of Kutak Rock LLP, of Wichita, *Tory M. Bishop* and *Kathryn E. Jones*, of the same firm, of Omaha, Nebraska, and Scott H. Raymond of Blue Cross Blue Shield of Kansas, Inc., for appellant.

*Mark Edwards* and *Peter Charles Rombold*, of Hoover, Schermerhorn, Edwards, Pinaire & Rombold, of Junction City, for appellees.

Before MALONE, C.J., ARNOLD-BURGER and GARDNER, JJ.

GARDNER, J.: Rarely do we permit a party to raise a new issue on appeal, but we must do so here. At oral argument, counsel for Blue Cross and Blue Shield of Kansas, Inc. (BCBS) alleged, for the first time in this case, that this court lacks subject matter jurisdiction because the only statute which BCBS allegedly violated does not provide a private right of action. Because we agree that both the district court and this court lack subject matter jurisdic-

tion, we vacate the judgment entered by the district court and dismiss this appeal.

*Procedural summary*

Samuel Jahnke (Jahnke) brought suit against Blue Cross and Blue Shield of Kansas, Inc., due to BCBS's refusal to pay medical bills he incurred for his treatment, including surgery, of a brain tumor. BCBS denied benefits for the medical costs associated with the surgery because the costs had been incurred during the policy's 240-day waiting period for the treatment of tumors and growths. The Jahnkes claim that the 240-day waiting period violated the Kansas Small Employer Health Care Act, K.S.A. 40-2209b *et seq.*, (the Act) which relates to "health benefits plans covering small employers." K.S.A. 40-2209c.

BCBS removed this action to federal court on the basis that the Jahnkes' claims were preempted by the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. §§ 1001-1461 (2006). The federal court disagreed, finding no federal subject matter jurisdiction, and remanded the case to the state district court.

Upon remand, the Jahnkes and BCBS filed cross-motions for summary judgment. The district court granted BCBS's motion for summary judgment on Count I pursuant to the agreement of the parties but granted the Jahnkes' motion for summary judgment on Count II. In doing so, the district court adopted the federal court's ruling that ERISA did not apply due to the safe habor exemption. The district court ruled the policy was subject to the Act, the Act restricted waiting periods to 90 days' maximum, and BCBS's 240-day waiting period violated the Act. The court awarded the Jahnkes damages in the amount of $99,459.97, plus interest. Following a subsequent motion and hearing, the court awarded $93,839.51 in attorney fees to the Jahnkes.

BCBS appeals. In its brief, it argues: (1) the district court erred in granting summary judgment to the Jahnkes because the policy's 240-day waiting period does not violate K.S.A. 40-2209f(f); (2) the district court erred in denying summary judgment to BCBS on the basis of ERISA preemption because the safe harbor exemption does not apply; and (3) the district court erred in awarding attorney

fees to the Jahnkes because BCBS did not act without just cause or excuse in denying the claim.

### The farming enterprise

The facts are largely undisputed. Samuel R. Jahnke & Sons is a family farming enterprise that employed Samuel R. Jahnke, his wife Mary, and their sons Matthew and Eric. The ownership of Jahnke & Sons was divided equally among the family, with Samuel and Mary owning a one-third interest, Matthew owning a one-third interest, and Eric and Kristel Jahnke owning a one-third interest.

Since March 30, 2007, Jahnke & Sons has been a Subchapter S Corporation, thus Jahnke and Sons' income, losses, deductions, and credits passed through to the corporate owners or shareholders who then paid taxes on the corporation's income on their individual tax returns. As an S corporation, Jahnke & Sons did not pay any taxes; rather, all of Jahnke & Sons' tax liability was passed through to its shareholders. Each of the three Jahnke households, as equal shareholders, claimed one-third of Jahnke & Sons' income and expenses on their personal tax returns.

### The health insurance policies

On September 1, 2005, BCBS issued a policy of health insurance for the employees of Jahnke & Sons and their family members. From 2005 to 2008, the owners of Jahnke & Sons were covered by a group policy issued by BCBS. On September 1, 2008, the Jahnkes elected to cancel their group insurance policy and purchase new individual policies for the purpose of dropping unneeded maternity coverage and lowering their premiums. The new policies, which became effective September 1, 2008, deleted maternity coverage but included different terms and conditions.

Jahnke acknowledged and agreed to the different coverage and new conditions by signing the Enrollment Confirmation Form which expressly set out the new policy's waiting periods. That form specifically notified Jahnke of a 240-day waiting period for the "[t]reatment of tumors or growths," stating:

"**B. Waiting Periods.** The Insured must have had continuous coverage for 240 days dating from the date this coverage becomes effective for the conditions named below before benefits are available.

"1. Removal of tonsils and or adenoids.

"2. Treatment of tumors or growths.

"3. Treatment for a hernia.

"4. Treatment for conditions of the gall bladder, rectum, or genito-urinary tract."

## Payment of the premiums

Each of the three shareholders of Jahnke & Sons claimed a self-employed health insurance deduction on their personal tax returns for one-third of the total health insurance premiums paid by Jahnke & Sons. Jahnke & Sons paid its employees' health insurance premiums directly to BCBS "out of the corporate account" and "out of the corporate cash." However, the insurance premiums paid by Jahnke & Sons were allocated equally to the three shareholders as distributions despite the fact that the shareholders' actual individual premium amounts were unequal. The actual amounts of the premium payments were not reported as income on the employees' W-2 forms.

## Reference to individual policies as a group policy

In the correspondence to the Jahnkes noting the change in coverage, BCBS identified the policy as Group Number M008395, projected to be effective on September 1, 2008. When the coverage was changed, BCBS identified the group name as Samuel R. Jahnke & Sons. The package code was identified as "First Choice Business," not "True Group," "First Choice Individual," or "Plan 65." The reissued policy was prefaced by and delivered to Jahnke & Sons under a group name and with a specified group number. Correspondence regarding the policy also specified the group name. The BCBS member summary for the policy provided:

"BLUE CHOICE COMP MAJOR MEDICAL OPTION/PLAN 1, DRUG EMPLOYEE GROUP (1-4),

"CANCELLED: SYSTEM ASSIGNED — GROUP ID CHANGED TO A NEW GROUP ID."

BCBS admits that its correspondence often referred to the policy as a group policy, but it contends such references were for mere convenience and are immaterial because the policy was an individual policy which it never treated as a group policy.

*The denial of coverage*

On or about April 19, 2009, approximately 11 days before expiration of the 240-day waiting period, Jahnke underwent an operation to remove a brain tumor. BCBS denied the subsequent related claim under the policy's 240-day waiting period for the treatment of tumors or growths.

After BCBS denied coverage, Jahnke exhausted the internal appeals set forth in the BCBS policy. Before his death, Jahnke filed this case against BCBS in the district court, asserting two claims. Count I of the petition alleged that the policy violated K.S.A. 40-2209(a)(8) in failing to waive the preexisting conditions exclusion. Count II alleged that the policy's 240-day waiting period violated K.S.A. 40-2209f(f)'s provision that health benefit plans covering small employers cannot have a waiting period longer than 90 days.

*The federal court proceedings*

After conducting limited discovery, BCBS removed this action to the United States District Court for the District of Kansas, alleging preemption by the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. §§ 1001-1461 (2006).

The federal court granted summary judgment to BCBS on Count I based on its "determination that the policy at issue was an individual rather than a group plan." The Jahnkes have since abandoned this theory of relief.

As to Count II, the federal court denied summary judgment, finding a question of material fact as to whether K.S.A. 40-2209f(f) applied to the policy because the evidence failed to establish beyond a reasonable doubt that the Samuel Jahnke policy was issued to him totally independent of the small employer group. See K.S.A. 40-2209e(d), (a). The federal court found a material question of fact as to whether Jahnke & Sons contributed to payment of the policy premiums such that ERISA's safe harbor exemption would apply. In addition, the federal court found that BCBS "did not act arbitrarily or capriciously" when it denied the claim. *Samuel R. Jahnke & Sons, Inc. v. Blue Cross/Blue Shield of Kansas*, No. 10-4098-JTM, 2011 WL 4526778 (D. Kan. 2011) (unpublished opinion).

The court later held an evidentiary hearing on the application of ERISA's "safe harbor" provision, 29 C.F.R. § 2510.3-l(j). It ultimately found that the payments to BCBS for the Jahnkes' health insurance had not been made by an employer but had been paid by the individual shareholders of Jahnke & Sons. Accordingly, ERISA's safe harbor exemption applied and the action was not preempted by ERISA. Because no federal question provided a basis for subject matter jurisdiction, the federal court remanded this action to the state district court. *Samuel R. Jahnke & Sons, Inc. v. Blue Cross/Blue Shield of Kansas*, No. 10-4098-JTM, 2012 WL 3234757 (D. Kan. 2012) (unpublished opinion).

*Proceedings on remand*

On remand, the parties filed cross-motions for summary judgment. The Jahnkes had abandoned Count I, so the district court granted summary judgment in favor of BCBS on that count pursuant to the agreement of the parties.

As to Count II, the Jahnkes argued that the policy's 240-day waiting period violated K.S.A. 40-2209e and K.S.A. 40-2209f(f) because Kansas law places a 90-day limitation on waiting periods. BCBS argued that the Jahnkes' state law claims were preempted by ERISA, that their policy was not subject to the Kansas Small Employer Health Care Act, and that even if the policy were subject to that Act it did not violate K.S.A. 40-2209f(f).

The district court granted summary judgment in favor of the Jahnkes on the remaining issues, adopting the federal court's findings and analysis with respect to ERISA preemption. The court ruled that the policy was exempt from ERISA because the small employer, Jahnke & Sons, had made no contribution to the payment of the policy's premiums. The district court found the policy, although it was an individual and not a group policy, was subject to the Act because the focus is not on whether a policy was issued *for* a group in terms of *coverage*, but simply *to* a group otherwise authorized to supply coverage. The district court concluded that the insurance policy's 240-day waiting period violated K.S.A. 40-2209f(f) because it exceeded the statutory 90-day maximum and

found that insurance coverage for the treatment of the brain tumor should have become effective December 10, 2008.

After a hearing, the court awarded the Jahnkes damages in the amount of $99,459.97, plus interest in the amount of $44,945.57 from March 30, 2009, and continuing at the legal rate of interest. The Jahnkes then moved for attorney fees pursuant to K.S.A. 40-256. BCBS did not contest the reasonableness of the amount of the attorney fees sought but alleged no fee award was proper. The court granted the Jahnkes' request for attorney fees because the evidence, taken in its totality, revealed that the denial of coverage was "without just cause or excuse." The court thus awarded fees in an amount over $93,000. BCBS timely appealed from the judgment.

*Appellate oral argument*

At oral argument of this case, counsel for BCBS began by notifying the court and opposing counsel that it wished to raise a new argument on appeal. Neither the court nor opposing counsel had any prior notice of this new argument. BCBS contended that the Jahnkes had no private right of action under the Act, including K.S.A. 40-2209f, thus the district court lacked and this court lacks subject matter jurisdiction. This court ordered supplemental briefing, and the parties responded. BCBS contends that violations of the Act may be enforced only by the Commissioner of Insurance, divesting this court of subject matter jurisdiction. The Jahnkes respond that the issue of subject matter jurisdiction cannot be raised this late in the case, and that this is a simple breach of contract action for which a private right of action clearly exists.

*Breach of contract*

We first address the Jahnkes' assertion that they have stated a claim for breach of contract, in which case this court obviously has subject matter jurisdiction.

The Jahnkes point to various oral arguments and communications between the parties which refer to this case, in its earlier stages, as a breach of contract case, or to policy language giving the insured a right to sue in court after exhausting BCBS's internal appeal procedure for claims alleging breach of contracts. But that

focus is misdirected. Our determination of the nature of the case is based on the pleadings that the Jahnkes filed in this case, since no pretrial order was entered.

The Jahnkes' petition alleges no constitutional or common-law violations and no breach of contract. It states, in Count II:

"Plaintiffs have exhausted all of their administrative remedies as required by the Contract[;] BCBS has issued different policies to members of the Jahnke group that set forth different waiting periods[;] a group policy should have uniform provisions[;] Plaintiffs are clearly the type of small business that is provided protection pursuant to K.S.A. 40-2209[;] K.S.A. 40-2209f(f) specifically provides for a ninety (90) day waiting period for certain conditions[;] the policy issued to Jahnke by BCBS is in clear violation of Kansas statutes[; and] Plaintiffs have been damaged in an amount in excess of $75,000.00 as a result of the denial of coverage."

We recognize that "a host of Kansas decisions have interpreted the provisions of K.S.A. 60-208 to provide for a liberal construction of the pleadings with the emphasis on substance rather than form." *Oller v. Kincheloe's, Inc.*, 235 Kan. 440, 446, 681 P.2d 630 (1984). And we may permit issues not raised by the pleadings to be treated as if they were raised by the pleadings when such issues are tried by express or implied consent of the parties. K.S.A. 60-215(b).

But here, the parties submitted the case via cross-motions for summary judgment on Count II on the sole legal theory that the policy breached the statute, not that BCBS breached the policy. This case has been subject to multiple evidentiary hearings, both in federal and state court, in which the Jahnkes' sole claim under Count II was that BCBS violated the Act. We find no breach of contract included in Count II of the petition, and no such claim has been tried by express or implied consent of the parties. Nor is any such breach apparent from the facts, as the 240-day waiting period for tumors was clearly disclosed and unambiguously stated in the policy, and Jahnke's treatment for his tumor indisputably fell within that 240-day period. Under these circumstances, we find no merit to the Jahnkes' claim that this is a breach of contract case. Therefore, if the Jahnkes have no private right of action under the Act, then they cannot prevail.

Accordingly, we must determine whether we have jurisdiction to reach the alleged violation of K.S.A. 40-2209f(f), the 90-day maximum waiting period prescribed by statute.

*Subject matter jurisdiction*

The Jahnkes contend that it is too late in the day to raise the issue of subject matter jurisdiction. Although we share the Jahnkes' view that this issue should have been raised years ago, we cannot find it time-barred.

The issue of subject matter jurisdiction may be raised at any time, in any manner, before any court. *State v. Ernesti*, 291 Kan. 54, 60, 239 P.3d 40 (2010); *Mid-Continent Specialists, Inc. v. Capital Homes*, 279 Kan. 178, 185, 106 P.3d 483 (2005). Moreover, this court has an independent duty to determine whether subject matter jurisdiction exists. See *Associated Wholesale Grocers, Inc. v. Americold Corporation*, 293 Kan. 633, 637, 270 P.3d 1074 (2011).

Whether jurisdiction exists is a question of law over which this court's scope of review is unlimited. *Frazier v. Goudschaal*, 296 Kan. 730, 743, 295 P.3d 542 (2013). Parties cannot confer subject matter jurisdiction by consent, waiver, or estoppel, and a failure to object will not invest the court with the requisite jurisdiction. *Ryser v. State*, 295 Kan. 452, 456, 284 P.3d 337 (2012). Moreover, if the district court lacks jurisdiction to enter an order, an appellate court does not acquire jurisdiction over the matter on appeal. 295 Kan. at 456.

Subject matter jurisdiction authorizes the court to hear and determine a case. See *State v. Bickford*, 234 Kan. 507, 508-09, 672 P.2d 607 (1983). Subject matter jurisdiction is ordinarily conferred by statute. *Kingsley v. Kansas Dept. of Revenue*, 288 Kan. 390, 395, 204 P.3d 562 (2009).

"A court must be vested with subject matter jurisdiction in order for it to properly act in a case. *State v. Bickford*, 234 Kan. 507, 508-09, 672 P.2d 607 (1983). Subject matter jurisdiction is vested by statute and establishes the court's authority to hear and decide a particular type of case. *Kingsley v. Kansas Dept. of Revenue*, 288 Kan. 390, 395, 204 P.3d 562 (2009). Proceedings conducted or decisions made by a court are legally void when there is an absence of subject matter jurisdiction. *Bickford*, 234 Kan. at 509." *Bradley v. Bear*, 46 Kan. App. 2d 1008, 1012, 272 P.3d 611 (2012).

"Which party should win a lawsuit is an altogether different question from that of whether the court has the power to say who

wins." *Frazier v. Goudschaal,* 296 Kan. 730, 743, 295 P.3d 542 (2013). Subject matter jurisdiction refers to the power of a court to hear and decide a particular type of action. *Wichita Eagle & Beacon Publishing Co. v. Simmons,* 274 Kan. 194, 205, 50 P.3d 66 (2002). Jurisdiction over subject matter is the power to decide the general question involved and not the exercise of that power. *Babcock v. City of Kansas City,* 197 Kan. 610, 618, 419 P.2d 882 (1966).

The parties tacitly agree that the absence of a private right of action defeats the court's subject matter jurisdiction. Although we find no Kansas case so stating, cases sufficiently analogous to ours support that conclusion. Kansas courts have often held that a failure to exhaust administrative remedies warrants dismissal based on a lack of subject matter jurisdiction. See, *e.g., Dean v. State,* 250 Kan. 417, 427-28, 826 P.2d 1372, *cert. denied* 504 U.S. 973 (1992) (so stating); *Zarda v. State,* 250 Kan. 364, 374, 826 P.2d 1365 (1992) (finding plaintiffs had a clear and certain statutory remedy for full, adequate, and complete relief so the district court lacked jurisdiction to grant such relief, and properly dismissed that part of plaintiffs' action). Similarly, exhaustion of administrative remedies is a precondition to judicial review under the Kansas Judicial Review Act (KJRA). *Jones v. State,* 279 Kan. 364, 368, 109 P.3d 1166 (2005). Strict compliance with the pleading requirements of K.S.A. 77-614(b) is necessary before a court may exercise subject matter jurisdiction over a petition for judicial review. *Kingsley v. Kansas Dept. of Revenue,* 288 Kan. 390, 408-09, 204 P.3d 562 (2009) (finding no subject matter jurisdiction to consider a petition when a person does not exhaust all available administrative remedies under the Kansas Judicial Review Act). The Kansas Supreme Court has recently held that a party's failure to comply with the notice requirement in K.S.A. 2012 Supp. 12-105b(d) for claims against a municipality under the Kansas Tort Claims Act implicates subject matter jurisdiction. *Sleeth v. Sedan City Hospital,* 298 Kan. 853, 862-63, 317 P.3d 782 (2014).

Kansas appellate courts may exercise jurisdiction only under circumstances allowed by statute. *Flores Rentals v. Flores,* 283 Kan. 476, 481, 153 P.3d 523 (2007), *as modified* (May 11, 2007). Thus,

if a statute requires that violations of the statute's provisions be enforced exclusively by a governmental entity, as BCBS contends here, this court lacks subject matter jurisdiction over a claim brought by a private party. See *Nichols v. Kansas Political Action Committee*, 270 Kan. 37, 50-51, 11 P.3d 1134 (2000) (affirming dismissal for lack of subject matter jurisdiction where statute provided no private right of action); see also K.S.A. 20-301 (providing for "general original jurisdiction of all matters, both civil and criminal, *unless otherwise provided by law*") (emphasis added). Such a statute affects the court's power to hear and decide a particular type of action. "Appellate courts and administrative tribunals have jurisdiction to entertain an appeal only if an appeal is prescribed by statute. *McDonald v. Hannigan*, 262 Kan. 156, 160, 936 P.2d 262 (1997)." *Wasson v. United Dominion Industries*, 266 Kan. 1012, 1018-19, 974 P.2d 578 (1999). Here, no appeal to this court is prescribed by the Act or other statute.

Accordingly, for this court to have subject matter jurisdiction over the Jahnkes' claim that BCBS violated their right under the statute, we must find that they have a private right to enforce that statute by bringing this action in court.

*Private right of action*

Some statutes expressly impose personal liability on persons or entities for violation of the provisions thereof, or for failure to perform specified duties. For example, the Kansas Supreme Court found a private right of action under the federal Telephone Consumer Protection Act, 47 U.S.C. § 227(b)(3) (2006), which provided that for each violation a person is entitled to $500 or actual damages, whichever is greater, as well as treble damages if the violation is willful or knowing. *Critchfield Physical Therapy v. The Taranto Group, Inc.*, 293 Kan. 285, 291, 263 P.3d 767 (2011).

"Most statutes do not, however, explicitly confer on potential plaintiffs a civil remedy." *Shirley v. Glass*, 297 Kan. 888, 894, 308 P.3d 1 (2013). Nor does the statute allegedly violated here—K.S.A. 40-2209f. Nonetheless, a private right of action may be implied. In such cases, a two-part test guides our determination:

"The determination of whether a private right of action exists under a statute is a question of law. Kansas courts generally use a two-part test in determining whether a private right of action is created. First, the party must show that the statute was designed to protect a specific group of people rather than to protect the general public. Second, the court must review legislative history in order to determine whether a private right of action was intended. See *Nichols v. Kansas Political Action Committee*, 270 Kan. 37, 11 P.3d 1134 (2000) (quoting *Nora H. Ringler Revocable Family Trust v. Meyer Land and Cattle Co.*, 25 Kan. App. 2d 122, 126, 958 P.2d 1162, *rev. denied* 265 Kan. 886 [1998]) (the *Ringler* test)." *Pullen v. West*, 278 Kan. 183, 194, 92 P.3d 584 (2004).

To determine whether the legislature intended to grant a private cause of action for a violation of a statute, we primarily look to the form or language of the statute.

" 'Generally, the test of whether one injured by the violation of a statute may recover damages from the wrongdoer is whether the legislature intended to give such a right. While, in some cases, statutes expressly impose personal liability on persons or entities for violation of the provisions thereof, or for failure to perform specified duties, the absence of such express provisions does not necessarily negate a legislative intent that the statute shall affect private rights. The legislative intent to grant or withhold a private cause of action for a violation of a statute, or the failure to perform a statutory duty, is determined primarily from the form or language of the statute. The nature of the evil sought to be remedied and the purpose the statute was intended to accomplish may also be taken into consideration. The generally recognized rule is that a statute which does not purport to establish a civil liability but merely makes provision to secure the safety or welfare of the public as an entity is not subject to construction establishing a civil liability.

" 'The question whether a liability arising from the breach of a duty prescribed by statute accrues for the benefit of an individual specially injured thereby, or whether such liability is exclusively of a public character, depends upon the nature of the duty imposed and the benefits to be derived from its performance, and the relevancy of the rule laid down by the statute to private rights. 73 Am. Jur. 2d, Statutes §§ 431 and 432, pp. 529-30.' *Greenlee v. Board of Clay County Comm'rs*, 241 Kan. 802, 804, 740 P.2d 606 (1987)." *Pullen*, 278 Kan. at 194.

Where the plain language of the statute is unambiguous, we do not speculate as to the legislative intent behind it.

"[T]he fundamental goal of statutory construction is to ascertain the intent of the legislature. *State v. Williams*, 298 Kan. 1075, 1079, 319 P.3d 528 (2014). But in determining legislative intent, the starting point is not legislative history; rather, we first look to the plain language of the statute, giving common words their ordinary meaning. See *Graham v. Dokter Trucking Group*, 284 Kan. 547, 556-57, 161 P.3d 695 (2007) . . . ; see also *Wabaunsee County*, 299 Kan. at 957 . . . .

If the plain language of a statute is unambiguous, we do 'not speculate as to the legislative intent behind it and will not read into the statute something not readily found in it.' *Cady v. Schroll*, 298 Kan. 731, 738-39, 317 P.3d 90 (2014)." *University of Kan. Hosp. Auth. v. Board of Comm'rs of Unif. Gov't.*, 301 Kan. 993, 998-99, 348 P3d 602 (2015).

### Other Kansas cases

Our analysis is informed by other Kansas cases which have examined whether a private right of action exists.

In *Pullen*, the Kansas Supreme Court found the provisions of the Kansas Fire Prevention Act (KFPA) and National Fire Prevention Association pamphlet 1123 (NFPA 1123) do not expressly create a private cause of action. 278 Kan. at 200-01. Disobeying the requirements for permits, licenses, and safety procedures is wrong only because the state fire marshal adopted NFPA 1123 as a regulation through the authority granted by the legislature. The provisions of the KFPA create criminal and administrative penalties for violations of NFPA 1123. Accordingly, Pullen failed to demonstrate that the legislature intended to create a private cause of action.

Similarly, in *Nichols*, 270 Kan. at 50-51, the Kansas Supreme Court found no private right of action because the legislature had designed a comprehensive scheme for enforcement of the Campaign Finance Act, evidencing its intent that alleged violations of that Act be processed by the Commission rather than by the courts.

The Court of Appeals found a private right of action, however, in *Dietz v. Atchison, Topeka & Santa Fe Rwy. Co.*, 16 Kan. App. 2d 342, 823 P.2d 810 (1991), *rev. denied* 250 Kan. 804 (1992). There, survivors of a truck driver who was killed by driving his truck into the side of a moving train brought a wrongful death action. The deceased had violated a Kansas Corporation Commission regulation requiring drivers hauling hazardous materials to stop, look, and listen at railroad crossings. The relevant statute stated:

"Any public utility or common carrier which shall violate any of the provisions of law for the regulation of such public utilities or common carriers shall forfeit, for every offense, to the person, company or corporation aggrieved thereby, three

times the actual damages sustained by the party aggrieved, together with the costs of suit, and a reasonable attorney fee, to be fixed by the court." K.S.A. 66-176.

We held that a plain reading of the statute indicated the legislature's intent to create, on behalf of "any person or corporation" injured as a direct result of a common carrier's violation of provisions of law regulating common carriers, an individual right of action against the common carrier. 16 Kan. App. 2d at 347.

Similarly, in *Nora H. Ringler, Revocable Family Trust v. Meyer Land and Cattle Co.*, 25 Kan. App 2d 122, 129, 131-32, 958 P.3d 1162 (1998), we determined that K.S.A. 1994 Supp. 65-171d, which contained distance requirements between livestock feeding facilities and habitable buildings, was intended to protect a particular class of persons. We then found that the legislature, knowing of KDHE's limited resources and citizens' complaints that small feedlots were causing considerable nuisance problems, intended to allow private citizens to enforce the distance requirements by injunctive relief.

*Who is this Act designed to protect?*

We first review the enabling legislation to determine whom the statute was designed to protect. K.S.A. 40-2209b states the purpose of the Small Employer Health Care Act:

"The purpose and intent of this act are to promote the availability of health insurance coverage to small employers regardless of their health status or claims experience, to prevent abusive rating practices, to require disclosure of rating practices to purchasers, to establish rules regarding renewability of coverage, to establish limitations on the use of pre-existing condition exclusions, to provide for development of 'basic' and 'standard' health benefit plans to be offered to all small employers, to provide for establishment of a reinsurance program, and to improve the overall fairness and efficiency of the small group health insurance market."

From this and other language used in the Act, see K.S.A. 40-2209g(a)(3), (d), we find that the purpose of the Act is to enhance the efficiency and fairness of the small employer health insurance marketplace, which primarily benefits small employers. Nothing in the Act itself indicates an intent to protect a specific group of persons which would include Jahnke.

Nor does the specific statute Jahnke relies on demonstrate an intent to protect a specific group of persons. That statute, K.S.A. 40-2209f(f), places a 90-day limitation on "waiting periods," stating:

"In the absence of the small employer's decision to the contrary, all health benefit plans shall make coverage available to all the eligible employees of a small employer without a *waiting period.* The decision of whether to impose a *waiting period* for eligible employees of a small employer shall be made by the small employer, who may only choose from the *waiting periods* offered by the carrier. No *waiting period* shall be greater than 90 days and shall permit coverage to become effective no later than the first day of the month immediately following completion of the *waiting period.*" (Emphasis added.) K.S.A. 40-2209f(f).

The Act then defines "waiting period" by stating: "For the purposes of this section, the term 'waiting period' means with respect to a group policy the period which must pass before the individual is eligible to be covered for benefits under the terms of the policy." K.S.A. 40-2209f(j). In setting limits on what small employer health benefits plans can do and mandating what they shall do with respect to group policy waiting periods, this statute reflects regulation of an industry primarily for the protection of small employers, and only incidentally, if at all, for the benefit of their individual employees.

*Does legislative history show an intent to create a private right of action?*

Two provisions of the Act are particularly relevant in determining whether the legislature intended to create a private right of action. The first states: "Violations of this act shall be treated as violations of the unfair trade practices act and subject to the penalties prescribed by K.S.A. 40-2407 and 40-2411 and amendments thereto." K.S.A. 40-2209o. The second provides: "The commissioner may adopt rules and regulations necessary to carry out the provisions of this act." K.S.A. 40-2209n. This language has remained unchanged since the Act was enacted, yet we find no precedent interpreting it.

*Federal court interpretation*

The United States District Court for the District of Kansas has held, however, that no private right of action exists under the Kan-

sas Unfair Trade Practices Act (KUTPA) statutes referenced above. In *Earth Scientists (Petro Services) Ltd. v. U.S. Fidelity & Guaranty Co.*, 619 F. Supp. 1465, 1468 (D. Kan. 1985), Judge O'Connor examined K.S.A. 40-2407 and 40-2411, and found that the overriding goal of the KUTPA is to provide the public with the benefits that flow from a well-regulated insurance industry. He concluded that the statute vests all power under the Act in the Commissioner of Insurance, who has the sole duty to enforce it, noting:

"Nowhere in the Act is there a provision for the recovery of monetary damages, which the plaintiff in this case is seeking. As the above quoted sections reveal, the Act provides only for 'cease and desist' orders, $100 monetary penalties, suspension of the insurer's license, refund of any premium and public notification of the insurer's violation, none of which the plaintiff is seeking." *Earth Scientists*, 619 F. Supp. at 1469.

The *Earth Scientists* decision was based largely on the plain meaning of the KUTPA:

"The purpose of this act is to regulate trade practices in the business of insurance . . . by defining, or providing for the determination of, all such practices in this state which constitute unfair methods of competition or unfair or deceptive acts or practices and by prohibiting the trade practices so defined or determined." K.S.A. 40-2401.

The court found no private right of action primarily because the KUTPA vests all power and duty to enforce the Act in the Commissioner of Insurance. See *Earth Scientists*, 619 F. Supp. at 1468-69.

In *Spencer v. Aetna Life & Casualty Ins. Co.*, 227 Kan. 914, 611 P.2d 149 (1980), our Supreme Court addressed whether the tort of bad faith was actionable in Kansas. In doing so, the court discussed the provisions of the KUTPA and the insured's possible remedies. The court concluded it would not recognize the tort of bad faith, reasoning:

"We are of the opinion the legislature has intended to provide a remedy for an insured who has problems with his insurance company. He can maintain an action on the contract for his policy benefits, with costs, interest and attorneys' fees under arbitrary circumstances. He may also report the company to the Department of Insurance under the Uniform Trade Practices Act for improper handling of claims pursuant to K.S.A. 40-2409(9). The company's actions are reviewable by the Department and punishable if found improper. The legislature has provided several

remedies for an aggrieved insured and has dealt with the question of good faith first party claims. Statutory law does not indicate the legislature intended damages for emotional suffering to be recoverable by an aggrieved insured through a tort of bad faith. Where the legislature has provided such detailed and effective remedies, we find it undesirable for us to expand those remedies by judicial decree." 227 Kan. at 926.

The *Earth Scientists* court relied on our Supreme Court's reasoning in *Spencer* to conclude that it would not expand the KUTPA to imply a private cause of action. The remedies are thus limited to: (1) a suit for breach of the insurance contract; and (2) a report to the Commissioner of Insurance who may proceed under the KUTPA. *Earth Scientists*, 619 F. Supp. at 1470. The *Earth Scientists* court found it significant that the KUTPA contained no language authorizing a private cause of action:

"Additionally, the Kansas Legislature has specifically provided for private causes of action in similar-type statutes enacted to protect the public. *See, e.g.,* Open Records Act, K.S.A. 45-222 (Supp.1984); Public Meetings Act, K.S.A. 75-4320 (1984); Uniform Trade Secrets Act, K.S.A. 60-3320 to 3330 (1983); Restraint of Trade Statutes, K.S.A. 50-108, -115, -137 (1983); Kansas Consumer Protection Act, K.S.A. 50-634 (1983); and Uniform Consumer Credit Code, K.S.A. 16a-5-203 (1981). It is clear that had the Kansas Legislature intended a private cause of action for KUTPA violations, it would have expressly provided for the same." 619 F. Supp. at 1471.

For additional support that the KUTPA was not intended to provide for a private cause of action, the *Earth Scientists* court noted:

"A second rule of statutory construction provides that when the Kansas Legislature adopts a statute from a uniform law, it carries with it the construction placed on that statute by the drafters, except when contrary to the Kansas Constitution or public policy. *Matter of Reed's Estate,* 233 Kan. 531, 541, 665 P.2d 824 . . . *cert. denied,* 464 U.S. 978, 104 S. Ct. 417, 78 L. Ed. 2d 354 (1983). As noted earlier, KUTPA was patterned after model legislation drafted by the National Association of Insurance Commissioners. The NAIC has consistently argued that the legislation was not intended to create a private cause of action. Schroer & Hulsey, *Unfair Claims Settlements,* 5 J. KTLA No. 4, 8, 8-9 (1982); Shernoff, *Insurance Company Bad Faith Law,* Trial, May 1981 at 23-24." 619 F. Supp. at 1471.

*The Kansas Unfair Trade Practices Act*

Here, the Act expressly states that violations of the Act shall be treated as violations of the KUTPA and subject to the penalties prescribed therein. K.S.A. 40-2209o. The specific provisions of the KUTPA relevant in this case follow.

K.S.A. 40-2402(b): " 'Commissioner' shall mean the commissioner of insurance of this state."

K.S.A. 40-2405: "The commissioner shall have power to examine and investigate into the affairs of every person engaged in the business of insurance in this state."

K.S.A. 40-2406(a): "Whenever the commissioner has reason to believe that any such person has been engaged or is engaging in this state in any unfair method of competition or any unfair or deceptive act or practice . . . and that a proceeding by the commissioner in respect thereto would be to the interest of the public, the commissioner shall issue and serve upon such person a statement of the charges in that respect and conduct a hearing thereon in accordance with the provisions of the Kansas administrative procedure act."

K.S.A. 40-2407(a): "[T]he commissioner shall render an order requiring such person to cease and desist from engaging in such method of competition, act or practice and if the act or practice is a violation of K.S.A. 40-2404 . . . may in the exercise of discretion order any one or more of the following: (1) Payment of a monetary penalty of not more than $1,000 . . . (2) suspension or revocation of the person's license if such person knew or reasonably should have known such person was in violation of this act; or (3) redress of the injury by requiring the refund of any premiums paid by, the payment of any moneys withheld from, any consumer and appropriate public notification of the violation."

K.S.A. 40-2411: "Any person who violates a cease and desist order of the commissioner . . . may be subject at the discretion of the commissioner to any one or more of the following: (a) A monetary penalty of not more than $10,000 for each and every

act or violation . . .; or (b) suspension or revocation of such person's license; (c) redress of the injury by requiring the refund of any premiums paid by, the payment of any moneys withheld from, any consumer and appropriate public notification of the violation."

K.S.A. 40-2412: "The powers vested in the commissioner by this act, shall be additional to any other powers to enforce any penalties, fines or forfeitures authorized by law with respect to the methods, acts and practices hereby declared to be unfair or deceptive."

Given this statutory language, which is substantially unchanged from the date Judge O'Connor reviewed it, we find the rationale of *Earth Scientists* persuasive and agree that KUTPA affords no private right of action. This Act, in mandating that its violations "shall be treated as violations of the unfair trade practices act" and subject to its penalties, expresses clear legislative intent that it creates no private right of action. See K.S.A. 40-2209o

*The Act's other enforcement provisions*

Other provisions of the Act support our conclusion that no private right of action is intended. The Act's references to enforcement and the administration of the Act refer exclusively to the Commissioner of Insurance. See K.S.A. 40-2209d(k)(1) (deemed by the commissioner to be in hazardous financial position); K.S.A. 40-2209g(c) and (d) (commissioner may adopt rules and regulations and approve the establishment of additional classes of businesses to enhance the efficiency and fairness of the small employer marketplace); K.S.A. 40-2209h(a)(10) (commissioner may establish regulations to assure that rating practices used are consistent with the purposes of the Act); K.S.A. 40-2209h(c) (the commissioner may suspend the application of subsection [a][1] for a specified time period and under certain conditions); K.S.A. 40-2209j (carriers must file actuarial certificate with commissioner demonstrating compliance with the Act); K.S.A. 40-2209m(g) (commissioner may adopt rules and regulations setting forth additional standards to provide for the fair marketing and broad availability of health

benefit plans to small employers). Further, judicial review is available for decisions, actions, or orders of the Insurance Commissioner. See K.S.A. 40-2407(b); 40-2408(a), (b); *Golden Rule Ins. Co. v. Tomlinson*, 300 Kan. 944, 335 P.3d 1178 (2014) (resolving petition for judicial review of Kansas Insurance Department's order which found insurer in violation of the Unfair Trade Practices Act). These statutes evidence the court's lack of authority to decide actions brought directly in court by private parties who have not followed the statutorily authorized route of complaining to the Insurance Commissioner, obtaining an agency decision, then pursuing judicial review in court.

Additionally, courts generally presume that the legislature acts with full knowledge of existing law. *In re Adoption of H.C.H.*, 297 Kan. 819, 831, 304 P.3d 1271 (2013). When the legislature fails to modify a statute to avoid a standing judicial construction of the statute, this court may presume that the legislature intended the statute to be interpreted as it had been in the past. *Cady v. Schroll*, 298 Kan. 731, 737, 317 P.3d 90 (2014).

Accordingly, we presume the legislature knew when it enacted the Act 7 years after the *Earth Scientists* decision that the KUTPA did not contain a private cause of action, yet it made sure to align the Act's remedies and penalties with the KUTPA. See K.S.A. 40-2209o. Since that time, the legislature has had many opportunities to add a provision creating a private cause of action under the KUTPA but has not done so. We therefore find no private right of action under the Kansas Small Employer Health Care Act.

We thus conclude that in this Act, as in the KUTPA, the legislature provided no express or implied private cause of action. Because neither this court nor the district court has subject matter jurisdiction over the Jahnkes' direct action in court, we must dismiss this appeal and vacate the judgment entered by the district court.

*ERISA preemption*

Nonetheless, we briefly address BCBS's contention that ERISA preempts this state court action. Both the federal court and the district court addressed this issue, rejecting BCBS's claim of ER-

ISA preemption. Suffice it to say that we have reviewed the record of the evidentiary hearing held in federal court and agree, for the reasons stated by Judge Marten, that ERISA's safe harbor exemption applied, precluding federal subject matter jurisdiction. See *Samuel R. Jahnke & Sons, Inc. v. Blue Cross/Blue Shield of Kansas*, No. 10-4098-JTM, 2011 WL 4526778, at *8 (D. Kan. 2011) (unpublished opinion); *Samuel R. Jahnke & Sons, Inc. v. Blue Cross/Blue Shield of Kansas*, No. 10-4098-JTM, 2012 WL 3234757 (D. Kan. 2012) (unpublished opinion). We do so recognizing that his decision is not binding on us. See *McIntosh v. Atchison, Topeka & Santa Fe Rwy. Co.*, 19 Kan. App. 2d 814, Syl. ¶¶ 3, 4, 877 P.2d 11, *rev. denied* 255 Kan. 1002 (1994).

The facts show that BCBS did not raise a material question of fact that Jahnke & Sons contributed to payment of the premiums. Rather, the evidence shows that even though the premiums were paid via a corporate check, the entire amount was passed on to the shareholders. Jahnke & Sons did not absorb any costs of the premiums but was a mere conduit for premium payments. We do not believe that a mistake, if any, by the shareholders in claiming a personal deduction on their tax returns is determinative of whether the employer contributed to the premiums. The entire amount of the premiums was paid by the three shareholders, not by Jahnke & Sons. That the premiums were allocated equally among the shareholders is not determinative, as that fact does not show that Jahnke & Sons absorbed any portion of the premiums' costs. We find the federal court decision persuasive in its analysis of ERISA and adopt its rationale here, finding the safe harbor exemption of 29 C.F.R. § 2510.3-1(j) applicable.

Judgment vacated and appeal dismissed.