NOT DESIGNATED FOR PUBLICATION

No. 116,662

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

In the Interest of
B.M., A Minor Child.

MEMORANDUM OPINION

Appeal from Crawford District Court; KURTIS I. LOY, judge. Opinion filed June 16, 2017.
Affirmed.

*Lucas J. Nodine*, of Nodine Legal, LLC, of Parsons, for appellant natural father.

*Michael Gayoso, Jr.*, county attorney, for appellee.

Before GARDNER, P.J., PIERRON, J., and BURGESS, S.J.

*Per Curiam*:  B.M.'s natural father, J.M. (Father), appeals the district court's termination of his parental rights. Father argues that the district court did not have jurisdiction to terminate his parental rights and violated his due process rights when it failed to hold an evidentiary hearing before adjudicating B.M. a child in need of care. Father also contends there is no proof he had adequate notice of the termination proceeding and the agency did not make reasonable efforts to rehabilitate the family. Finally, Father argues the district court erred by denying his motion for new trial since the case manager had been terminated for lying about the performance of her duties. Finding that the district court did have jurisdiction to proceed with the termination of Father's rights and that Father's additional arguments are not persuasive, we affirm.

1

FACTUAL AND PROCEDURAL BACKGROUND

On August 7, 2013, the State filed a child in need of care (CINC) petition alleging B.M. was a CINC. The State alleged B.M. was covered in bruises, had a skull fracture, had an old fracture in her leg, and was hemorrhaging in her brain. Since B.M.'s injuries were consistent with child abuse, the district court ordered B.M. removed from her mother's, C.V. (Mother), home and placed her in Kansas Department for Children and Families (KDCF) custody. Father stated he had not seen B.M. since May 2013 because he was incarcerated.

On October 28, 2013, Mother entered a no contest statement, the district court adjudicated B.M. a CINC as to Mother, and placed B.M. in KDCF custody. The State did not seek adjudication as to Father. The State subsequently moved to terminate Mother's parental rights. Mother ultimately relinquished her parental rights. Eventually, B.M. returned to Father's home. The district court removed B.M. from Father's home on January 7, 2015, as Father was using drugs.

On May 16, 2016, the State filed a motion to terminate Father's parental rights. The State alleged the district court should terminate Father's parental rights because he was unfit by reason of conduct or condition which rendered him unable to care for B.M.; he exhibited a lack of effort to adjust his circumstances, conduct, or conditions to meet B.M.'s needs; and his probation for felony theft had been revoked in case No. 12CR299G. The motion also alleged the statutory presumptions of unfitness in K.S.A. 2016 Supp. 38-2271(a)(5) and (a)(6) applied.

The termination proceeding occurred on July 26, 2016. The State presented three witnesses:  Kayla Budd, B.M.'s case manager; Lisa Milford, a supervisor with KVC; and Laura Ferlo, B.M.'s therapist. Father testified in his own defense.

2

The district court found the presumptions in K.S.A. 2016 Supp. 38-2271(a) applied, found Father had an opportunity to rebut the presumptions and failed to do so, and terminated Father's parental rights.

On September 8, 2016, Father filed a motion for new trial alleging the State's case was based "solely" on Budd's testimony and KVC had terminated her for lying about performance of her duties as a case manager. At the hearing on Father's motion, the State indicated it had no information indicating Budd lied in this case. Father requested a chance to examine Milford, who was present, regarding Budd's termination. The district court denied Father's request finding that even ignoring Budd's testimony, Father failed to sufficiently rebut the presumptions of unfitness against him. The district court denied Father's motion for new trial.

Father appealed.

THE DISTRICT COURT HAD JURISDICTION TO
TERMINATE FATHER'S PARENTAL RIGHTS

Whether jurisdiction exists is a question of law over which this court's scope of review is unlimited. *Fuller v. State*, 303 Kan. 478, 492, 363 P.3d 373 (2015). Subject matter jurisdiction may be raised at any time, whether for the first time on appeal or even on the appellate court's own motion. *Jahnke v. Blue Cross & Blue Shield of Kansas*, 51 Kan. App. 2d 678, 686, 353 P.3d 455 (2015). Further, to the extent resolution of this matter requires statutory interpretation, this court's review is unlimited. *Neighbor v. Westar Energy, Inc.*, 301 Kan. 916, 918, 349 P.3d 469 (2015).

K.S.A. 2016 Supp. 38-2269(a), the statute concerning termination of parental rights, states:

3

"When the child has been adjudicated to be a [CINC], the court may terminate parental rights or appoint a permanent custodian when the court finds by clear and convincing evidence that the parent is unfit by reason of conduct or condition which renders the parent unable to care properly for a child and the conduct or condition is unlikely to change in the foreseeable future."

CINC is defined as, in relevant part:

"[A] person less than 18 years of age at the time of filing of the petition or issuance of an ex parte protective custody order pursuant to K.S.A. 2016 Supp. 38-2242, and amendments thereto, who:
    "(1) Is without adequate parental care, control or subsistence and the condition is not due solely to the lack of financial means of the child's parents or other custodian;
    "(2) is without the care or control necessary for the child's physical, mental or emotional health;
    "(3) has been physically, mentally or emotionally abused or neglected or sexually abused." K.S.A. 2016 Supp. 38-2202(d).

Father argues the district court did not have jurisdiction to terminate his parental rights because the district court did not adjudicate B.M. a CINC based on his conduct. The State argues the district court had jurisdiction because the court previously adjudicated B.M. a CINC and the definition of a CINC is child specific, not parent specific.

In *In re D.V.*, 17 Kan. App. 2d 788, 844 P.2d 752 (1993), the State filed a petition alleging D.V. was a CINC based on the mother's conduct only. The district court adjudicated D.V. a CINC. Two years later, the district court severed the father's parental rights. He appealed, arguing the district court erred because there was no adjudication as to him that D.V. was a CINC. A panel of this court affirmed, stating:

4

"K.S.A. 1991 Supp. 38-1583(a) [now K.S.A. 2016 Supp. 38-2269(a)] provides that a court may terminate parental rights '[w]hen the child has been adjudicated to be a [CINC].' K.P. asks this court to insert language into the statutory requirement so that it allows a court to terminate a parent's parental rights only after the court has determined that such parent's actions or inactions caused the child to be a [CINC]. The statute simply does not require this. In this case, the express provisions of the statute were satisfied in that the child was adjudicated to be a [CINC]." 17 Kan. App. 2d at 793.

In this case, father essentially argues termination of parental rights cannot be pursued against a parent unless there has been a CINC finding made as to the parent who is subject to the termination proceeding. Father relies on *In re N.D.G.*, 20 Kan. App. 2d 17, 883 P.2d 89 (1994). In that case the court found:  "The termination of the parent's rights or *the finding that a child is a 'child in need of care' depends upon the conduct of the parents whose rights are in issue* and not upon the conduct of the custodial parent or other person." (Emphasis added.) 20 Kan. App. 2d at 23-24.

In *In re N.D.G.,* the adoptive father, who had residential custody of N.D.G. and J.J.G., sought to terminate J.G.'s, the natural mother's, parental rights. The district court found the children to be CINC and terminated mother's parental rights. On appeal, the natural mother argued the finding that the children were CINC was inappropriate. The panel addressed this argument, stating:

"In the purest sense of the term, these children were not 'in need of care.' They were both in stable, loving homes. Neither was being abused, mistreated, or going without the necessities of life when this action was filed. However, as the evidence developed, it became obvious that *as to their mother, these children were, indeed, 'in need of care.'*

"The question is not purely whether the children are in need of care in the abstract use of that term. In this action, the focus is on how the children have been and will be cared for by J.G. If the evidence indicates that the children have been and will be in need of care if the relationship with their mother continues, they may be said to be

5

[CINC] as that term is used in the [Kansas Code for Care of Children]." (Emphasis added.) 20 Kan. App. 2d at 23.

The panel affirmed the district court's finding that the children were "[CINC] as the concept relates to the mother." 20 Kan. App. 2d at 24.

The State argues *In re N.D.G.* is distinguishable and it clearly is. Furthermore, it does not stand for the proposition being advanced by Father.

In the first instance, the mother in *In re N.D.G.* was appealing a finding that the children were CINC and not the termination of parental rights. A proceeding to find a CINC and a proceeding to terminate parental rights are very separate proceedings controlled by very different statutes.

The court in *In re N.D.G.* did not find that a CINC finding had to be made in regard to a parent before a termination of parental rights action could be pursued against that parent. The mother in that case was essentially arguing that the children were not in her custody and were being well cared for by their adoptive father. As such, they could not be in need of care. What the court actually found was that as long as there was evidence that the children have been or will be in need of care as a result of mother's conduct, they could be found to be children in need of care as to mother.

The district court in this case specifically found B.M. was a CINC. The district court found B.M. was without adequate parental care, control, or subsistence and the condition was not due solely to the lack of financial means of the child's parents or other custodian "as to the natural mother." The district court also found B.M. was without the care or control necessary for her physical, mental, or emotional health "as to the natural mother." The court further found B.M. had been physically, mentally or emotionally abused or neglected "as to the natural mother." The district court then found B.M. a

6

CINC "as to the natural mother." The district court did not make similar findings related to Father. Father's rights were not at issue during the adjudication phase of the proceedings.

In advancing the argument that a CINC finding must be made as to the parent against whom a termination of parental rights has been filed, Father is reading more into the termination statute than actually exists. The statute does not state that a parent's rights may be terminated only after a determination has been made that such parent's conduct caused the child to be found a CINC. The statute specifically states that when a child has been found to be a CINC, a court may proceed to terminate parental rights. Nothing more. Nothing less.

The essence of *In re N.D.G.* is that one parent should not be judged on the basis of the actions of the other parent. Whether there is a finding of a CINC or termination of parental rights depends solely on the conduct of the parent whose rights are at issue. It is absolutely clear that Father was not judged on the basis of Mother's conduct that led to the CINC finding. Father was judged solely on his conduct during the pendency of the case. His rights were protected in that the termination statutes require very specific findings as to the behavior of a parent before severance will be ordered. Father presented ample evidence on his own behalf, but there was more than substantial evidence to support the termination of parental rights.

THE DISTRICT COURT DID NOT VIOLATE FATHER'S DUE PROCESS RIGHTS

In the present case, Father argues the district court violated his due process rights. Father contends the district court erred when it determined he was unfit since he did not stipulate or plead no contest to the allegations in the CINC petition and the district court did not hold an evidentiary hearing on the petition. Though Father did not raise this issue

7

before the district court, he contends failure to address this claim of error would be inconsistent with substantial justice.

The State contends Father did not properly preserve this issue for appeal and argues the invited error doctrine applies. In addition, the State contends it did not violate Father's due process rights because he had an opportunity to be heard in a meaningful time and manner.

Generally, constitutional grounds for reversal asserted for the first time on appeal are not properly before the appellate court for review. *Bussman v. Safeco Ins. Co. of America*, 298 Kan. 700, 729, 317 P.3d 70 (2014). However,

> "'there are several exceptions to the rule that a new legal theory may not be asserted for the first time on appeal, including:  (1) the newly asserted theory involves only a question of law arising on proved or admitted facts and is finally determinative of the case; (2) consideration of the theory is necessary to serve the ends of justice or to prevent denial of fundamental rights; and (3) the judgment of the trial court may be upheld on appeal despite its reliance on the wrong ground or having assigned a wrong reason for its decision.' [Citation omitted.]" *In re Estate of Broderick*, 286 Kan. 1071, 1082, 191 P.3d 284 (2008).

"Natural parents who have assumed their parental responsibilities have a fundamental right, protected by the United States Constitution and the Kansas Constitution, to raise their children." *In re Adoption of Baby Girl P.*, 291 Kan. 424, 430, 242 P.3d 1168 (2010). As such, this court will address the issue.

The State contends the invited error rule applies because Father never objected to the district court's procedure or the court's finding that B.M. was a CINC. Generally, when a party has invited error, it cannot complain of the error on appeal. *Thoroughbred Assocs. v. Kansas City Royalty Co.*, 297 Kan. 1193, 1203-04, 308 P.3d 1238 (2013).

8

Whether the doctrine of invited error applies presents a question of law, and appellate courts exercise unlimited review over questions of law. *State v. Hankins*, 304 Kan. 226, 230, 372 P.3d 1124 (2016).

The State's argument is meritless. Application of the invited error doctrine requires more than the simple failure to object. See *State v. Dern*, 303 Kan. 384, 398, 362 P.3d 566 (2015) (failure to object to a faulty jury instruction is not invited error); *State v. Lewis*, 299 Kan. 828, 855, 326 P.3d 387 (2014) (acquiescence to district court's response to a jury question is not invited error). Father did not invite error by failing to object to the district court's procedure. Nor did Father invite error by failing to object to the district court finding B.M. was a CINC. Thus, the invited error doctrine does not apply.

"'Whether a right to due process has been violated is a question of law, over which an appellate court exercises unlimited review.'" *In re K.E.*, 294 Kan. 17, 22, 272 P.3d 28 (2012) (quoting *Davenport Pastures v. Board of Morris County Comm'rs*, 291 Kan. 132, Syl. ¶ 2, 238 P.3d 731 [2010]). A parent has a fundamental liberty interest in the right to raise their children. *In re Baby Girl P.*, 291 Kan. at 430. As such, a parent cannot be deprived of his or her right to the custody, care, and control of his or her child without due process of law. *In re J.D.C.*, 284 Kan. 155, 166, 159 P.3d 974 (2007). "A due process violation exists only when a claimant is able to establish that he or she was denied a specific procedural protection to which he or she was entitled." 284 Kan. at 166. Opportunity to be heard at a meaningful time in a meaningful manner is the fundamental requirement of due process. 284 Kan. at 166.

Father contends the district court denied him due process when it found him unfit without an evidentiary hearing to determine whether B.M. was a CINC. It can only be presumed that Father means that there was no hearing as to him. There was a hearing as to Mother and the district court made a finding that B.M. was a CINC.

9

This due process argument is premised on the assumption that a CINC finding as to Father was a prerequisite to the filing of a termination of parental rights against him. This has been shown to be a faulty premise.

### FATHER ONLY ALLEGED THERE IS NO "PROOF" THE STATE SERVED HIM; FATHER DOES NOT ALLEGE HE WAS NOT SERVED

On appeal, Father argues "there is no proof [in the] record that the motion requesting the finding of unfitness and the request for termination of parental rights were ever actually served upon the natural father." Father argues this court should address the issue despite his failure to object because notice is a fundamental due process requirement. As such, Father contends failure to address the issue would be inconsistent with substantial justice. The State argues Father did not properly preserve this issue for appeal because the issue was not raised before the trial court.

Generally, constitutional grounds for reversal asserted for the first time on appeal are not properly before the appellate court for review. *Bussman*, 298 Kan. at 729. Despite this, as discussed above, this court will address the issue.

Notably, however, Father does not argue the State failed to serve him a copy of the motion. Father does not argue he did not receive notice of the date and time of the proceedings or that the State would assert the statutory presumptions of unfitness against him. Father has not actually argued he was denied due process or made a claim of error.

Since a motion to terminate parental rights is similar to an original petition, it must be served on the parents. *In re H.C.*, 23 Kan. App. 2d 955, 958, 939 P.2d 937 (1997). Further, pursuant to K.S.A. 2016 Supp. 38-2267(b)(2), notice of a termination hearing "shall be given by return receipt delivery not less than 10 business days before the hearing." In addition, "[i]t is beyond question that the presumptions set forth in K.S.A.

10

[2016 Supp.] 38-2271 must be applied in a manner that comports with procedural due process." *In re K.R.*, 43 Kan. App. 2d 891, 898, 233 P.3d 746 (2010).

On June 7, 2016, the district court filed a notice of hearing indicating the termination proceeding was scheduled for Tuesday, July 26, 2016, at 9 a.m. The notice of hearing indicates a copy of the motion for termination of parental rights was attached, although it is not attached to the copy in the record on appeal. Additionally, the notice of hearing does not indicate how Father was served with the notice of hearing. Father signed for delivery of certified mail on June 24, 2016, but the certified mail receipt contains no information regarding what he received.

As Father indicates, the record does not contain "proof" the State served Father a copy of the motion for termination of parental rights. However, K.S.A. 2016 Supp. 38-2267(b)(2) requires service of the notice of hearing by return receipt, and a certified mail receipt is included in the record. Father signed for delivery of the certified mail 17 days after the State requested service. In addition, the register of actions does not indicate the district court mailed anything else to Father. Finally, Father did not—and does not—complain he was not properly served. Thus, while there is no "proof" the district court served him a copy of the termination motion, given the record as a whole, it is reasonable to assume the district court, in fact, served Father. Likewise, Father has not alleged he did not receive notice the statutory presumptions would be asserted against him. As such, Father has not actually argued the State denied him due process, and he is not entitled to relief.

THE AGENCY MADE REASONABLE EFFORTS TO REHABILITATE THE FAMILY

The Kansas Legislature has specified that the State must prove "by clear and convincing evidence that the child is a [CINC]." K.S.A. 2016 Supp. 38-2250. In addition

11

to CINC adjudications, the clear and convincing evidence standard of proof applies to all termination of parental rights cases. K.S.A. 2016 Supp. 38-2269(a).

> "[W]hen an appellate court reviews a trial court's determination that a child is in need of care, it should consider whether, after review of all the evidence, viewed in the light most favorable to the State, it is convinced that a rational factfinder could have found it highly probable, *i.e.*, by clear and convincing evidence, that the child was a CINC." *In re B.D.-Y.*, 286 Kan. 686, 705, 187 P.3d 594 (2008).

See *In re K.W.*, 45 Kan. App. 2d 353, 354, 246 P.3d 1021 (2011) (applying standard of review).

In making this determination, an appellate court does not weigh conflicting evidence, pass on the credibility of witnesses, or redetermine questions of fact. *In re B.D.-Y.*, 286 Kan. at 705.

Father contends KVC did not make reasonable efforts to reintegrate him with B.M. and, as a result, the district court erred when it terminated his parental rights. Father points to Budd's, his case manager, single attempted home visit, the length of time it took to receive a visit with B.M. after being released from prison, and KVC's suspension of visitation as proof KVC did not make reasonable efforts to reintegrate the family.

> "K.S.A. [2016 Supp.] 38-2269(b)(7) provides that in determining the fitness of a parent, one of the nonexclusive factors the court may consider is 'failure of reasonable efforts made by appropriate public or private agencies to rehabilitate the family.' This language appears to clearly impose an obligation upon the relevant social service agencies to expend reasonable efforts toward reintegrating the child with his or her parents. The social service agencies involved in the case should attempt to assist the parent in accomplishing case objectives designed to correct the parent's conduct or condition that caused the removal of the child from the home. See K.S.A. [2016 Supp.] 38-2201(b)(8) (citing as a goal of the Code the provision of 'preventative and

12

rehabilitation services, when appropriate, to abused and neglected children and their families so, if possible, the families can remain together without further threat to the children')." *In re J.R.*, No. 104,975, 2011 WL 2175953, at *5 (Kan. App. 2011) (unpublished opinion).

Notably, unlike the mother in *In re J.R.*, the district court did not terminate Father's parental rights pursuant to K.S.A. 2016 Supp. 38-2269(b)(7). There is no citation to any authority suggesting termination of parental rights must be reversed if an agency failed to make reasonable efforts to rehabilitate the family when K.S.A. 2016 Supp. 38-2269(b)(7) was not cited as a reason for termination. Failure to support a point with pertinent authority or show why it is sound despite a lack of supporting authority or in the face of contrary authority is akin to failing to brief the issue, and the issue is deemed abandoned. *University of Kan. Hosp. Auth. v. Board of Comm'rs of Unified Gov't*, 301 Kan. 993, 1001, 348 P.3d 602 (2015).

Father argues that "[i]t cannot be found to be a reasonable effort to essentially forget to allow a parent to have contact." However, the record does not reflect KVC "essentially forgot" to allow Father to have contact with B.M. Father was in prison from June 2015 through January 2016. Budd testified Father contacted KVC on January 14, 2016, to let KVC know he had been released from custody. Father's first therapeutic visit with B.M. was scheduled for February 22, 2016, before it was canceled. Instead, it occurred March 1, 2016. While 1 1/2 months delay in visitation is unfortunate following 6 months' incarceration, it is not unreasonable, and KVC did not "forget" to allow Father to have visitation.

Further, at least part of Father's argument relies on a misstatement of the facts. Father states: "Regardless, KVC says the family therapist suspended visits and Ms. Budd testified that she was 'not really sure why.'" However, Budd testified she was unsure why the therapist canceled a February 22, 2016, therapy session. She did not testify as to why

13

the visits were suspended. In addition, Father argues: "The family therapist never testified that she stopped visits, her only testimony was that she did not want to traumatize [B.M.] anymore." However, Milford, Budd's supervisor, indicated KVC therapeutically stopped visitations because the therapist felt visitation was too traumatic for B.M. B.M.'s therapist testified that during the therapy session with Father B.M. did not recognize Father, was very intimidated, she clung to her foster mother, and, when she left her foster mother's side, paced like a cougar. The therapist testified that after the therapy session B.M. was fearful, and was "just traumatized beyond measure and many days after that—weeks after that; so I determined after that visit that it was not—I couldn't traumatize her anymore." It is technically correct that the therapist never explicitly testified she stopped visitation. However, Father's argument ignores both Milford's prior testimony and the context of the therapist's testimony.

Father abandoned this argument because he failed to cite supporting authority or explain why his point is sound despite the lack of controlling authority. In addition, his argument relies, in part, on a misstatement of the facts. Finally, viewed in the light most favorable to the State, KVC made reasonable efforts to rehabilitate the family. Milford testified KVC called and requested urinalysis testing but Father did not responded. Milford testified Father simply failed to maintain contact with KVC. Milford testified she explained the importance of following through on his case plan tasks but Father did not complete his tasks. Father is not entitled to relief.

THE DISTRICT COURT DID NOT ERR WHEN IT DENIED
FATHER'S MOTION FOR NEW TRIAL

After KVC terminated Budd for lying about the performance of her duties as case manager, Father filed a motion for new trial. Father argues the district court erred when it denied his motion for new trial. He contends there was a reasonable probability that a different result "could be produced" at trial.

14

It is within the discretion of the trial court to grant or deny a new trial under K.S.A. 2016 Supp. 60-259(a). A ruling on a motion for new trial will not be disturbed on appeal except upon a showing of abuse of discretion. *Miller v. Johnson*, 295 Kan. 636, 684-85, 289 P.3d 1098 (2012). A judicial action constitutes an abuse of discretion if (1) no reasonable person would take the view adopted by the trial court; (2) the action is based on an error of law; or (3) the action is based on an error of fact. *Wiles v. American Family Life Assurance Co.*, 302 Kan. 66, 74, 350 P.3d 1071 (2015). The party asserting the trial court abused its discretion bears the burden of showing such abuse of discretion. *Northern Natural Gas Co. v. ONEOK Field Services Co.*, 296 Kan. 906, 935, 296 P.3d 1106 (2013).

Pursuant to K.S.A. 2016 Supp. 60-259(a)(1)(E), the district court may grant a motion for new trial based on "newly discovered evidence that is material for the moving party which it could not, with reasonable diligence, have discovered and produced at trial." To establish the right to a new trial based upon newly discovered evidence, a movant must establish: (1) that the newly proffered evidence could not have been produced at trial with reasonable diligence; and (2) that the newly discovered evidence is of such materiality that it would be likely to produce a different result upon retrial. *State v. Warren*, 302 Kan. 601, 615, 356 P.3d 396 (2015).

After argument from all parties, the district court found:

> "Even without the testimony of Kayla Budd, which was tested, and through the opportunity for cross-examination by [Father's] attorney, she did a more than adequate job, they were unable to rebut the presumptions against him.
> "This child had been in out-of-home placement and state custody for not only one year, but cumulative two years. And so neither presumption was overcome. The evidence was clear that his failures were willful. [Father] took—made no attempt to really fully attempt to become a father of any kind.

15

"The motion for new trial is denied, and the prior orders and judgment of the Court remain."

The presumptions referenced by the district court are the statutory presumptions of unfitness found in K.S.A. 2016 Supp. 38-2271(a)(5)-(6). Pursuant to this statute, a parent is presumed unfit if the State establishes by clear and convincing evidence:

"(5) the child has been in an out-of-home placement, under court order for a cumulative total period of one year or longer and the parent has substantially neglected or willfully refused to carry out a reasonable plan, approved by the court, directed toward reintegration of the child into the parental home;

"(6) (A) the child has been in an out-of-home placement, under court order for a cumulative total period of two years or longer; (B) the parent has failed to carry out a reasonable plan, approved by the court, directed toward reintegration of the child into the parental home; and (C) there is a substantial probability that the parent will not carry out such plan in the near future." K.S.A. 2016 Supp. 38-2271(a)(5)-(6).

Father argues that "there would quite probably be insufficient evidence to make [the] requisite factual findings to support the presumptions" if Budd's testimony was disregarded. Father's assertion is incorrect. Father testified B.M. last lived with him in February 2014. Father testified (1) that he spent about 6 months in jail during 2015; (2) that he left inpatient mental health treatment against medical advice; (3) that he never provided rent receipts, utility payment receipts, or paycheck stubs; and (4) that he used drugs the last time B.M. was allowed to live with him. In addition, Milford testified Father willfully refused to carry out his reintegration plan and that she did not believe Father would reengage and complete the reintegration plan in the near future.

Father also contends the denial of his request to question Milford regarding whether Budd's "practices" extended to this case should concern this court. However, this testimony would have had little value since, as discussed above, even disregarding

16

Budd's testimony, Father failed to rebut the presumptions against him. As such, the district court's denial of Father's request to question Milford is not an issue.

Father has not shown there was a reasonable probability a different result would occur at a retrial. A reasonable person could agree with the district court that, even disregarding Budd's testimony, there was sufficient evidence supporting the statutory presumptions and Father failed to rebut the presumption. See *Wiles*, 302 Kan. at 73-74. The district court did not abuse its discretion when it denied Father's motion for new trial.

Affirmed.